(No. 74270.—

NATIONAL MARINE, INC., Appellee, v. THE ILLI-
NOIS ENVIRONMENTAL PROTECTION
AGENCY et al., Appellants.

*Opinion filed July 28, 1994.*

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Carol L. Edelson and Susan Frederick Rhodes, Assistant Attorneys General, of Chicago, of counsel), for appellants.

William A. Speary, Jr., and Karen K. Litscher, of Much, Shelist, Freed, Denenberg & Ament, P.C., of Chicago, and Keith R. Leigh, of Pool & Leigh, of Ottawa, for appellee.

CHIEF JUSTICE BILANDIC delivered the opinion of the court:

This cause of action arises from the Illinois Environ-

mental Protection Agency's issuance of a notice to plaintiff, National Marine, Inc., pursuant to section 4(q) (4(q) notice) of the Environmental Protection Act (Act) (Ill. Rev. Stat. 1991, ch. 111$^{1}/_{2}$, par. 1004(q)). The Agency's 4(q) notice informed plaintiff that it may be potentially liable for a "release or a substantial threat of a release of a hazardous substance or pesticide" on property owned by plaintiff. In response to the issuance of the 4(q) notice, plaintiff brought the instant action in the circuit court of Grundy County against the Agency and its director, Bernard P. Killian (collectively, Agency). In its first-amended complaint, plaintiff sought declaratory and injunctive relief and the issuance of a writ of *certiorari.*

Upon motion by the Agency, the circuit court dismissed plaintiff's complaint in its entirety. The appellate court affirmed the circuit court's dismissal of the count praying for declaratory and injunctive relief. The appellate court, however, reversed the circuit court's dismissal of the count praying for the writ of *certiorari* and remanded the cause for further proceedings. (232 Ill. App. 3d 847.) We granted the Agency's petition for leave to appeal (134 Ill. 2d R. 315).

The issue before this court is whether the circuit court properly dismissed plaintiff's complaint challenging the Agency's issuance of the 4(q) notice.

The undisputed facts of this case are as follows. Plaintiff is the owner of an approximately 64-acre parcel of land in Grundy County. During the summer of 1989, the Agency hired an outside consultant (Harza) to conduct a preliminary investigation of a 12-acre portion of plaintiff's property to determine if there was a release or substantial threat of release of a hazardous substance on the property. This 12-acre portion of the parcel had previously been used for bulk storage and formulation

and distribution of agricultural chemicals, including liquid fertilizers. Harza collected samples from the soil and took water samples from three lagoons located on the 12-acre portion of the parcel. Testing of these samples showed high concentrations of contaminants. On February 7, 1990, the Agency inspected the 12-acre portion of plaintiff's land and found, *inter alia*, buried drums filled with unknown materials, buried tires and wood which had apparently been used as fill material, black-stained soil near an underground storage tank riser (a structure which indicates the existence of an underground storage tank), and an abandoned well house.

Based on these findings, the Agency determined that there was an actual or substantial threat of release of hazardous substances on plaintiff's property and, therefore, issued a 4(q) notice to plaintiff in February 1990 that so indicated. In this notice, however, the Agency inadvertently omitted the property description. In May 1990, the Agency issued a supplemental 4(q) notice to plaintiff in which the Agency amended the property description to include all of the approximately 64 acres of plaintiff's parcel.

Shortly thereafter, plaintiff filed this action challenging the Agency's issuance of the 4(q) notice. In its amended complaint, plaintiff sought: (1) a declaration that section 4(q) of the Act was unconstitutional on its face and as applied and that the Agency's action was illegal, (2) an injunction enjoining the Agency from enforcing the 4(q) notice or relying on the factual findings recited in the notice, and (3) the issuance of a writ of *certiorari* to review the Agency's record and reverse and quash the 4(q) notice.

In granting the Agency's motion to dismiss the complaint, the circuit court determined that plaintiff had failed to state a cause of action for which relief could be

granted. The circuit court found that plaintiff's cause of action was premature and that plaintiff had failed to exhaust its administrative remedies afforded to it pursuant to the Act. In affirming the circuit court's dismissal of the count seeking declaratory and injunctive relief, the appellate court held that section 4(q) of the Act is constitutional on its face and as applied. Noting the legislative intent to expediently contain and remedy environmental pollution hazardous to Illinois citizens, the appellate court found that due process did not entitle plaintiff to a preenforcement review of the propriety of the Agency's issuance of the 4(q) notice. The appellate court reversed the circuit court's dismissal of the count seeking a writ of *certiorari*, however, holding that "the gross disparity between the area of alleged actual contamination and the area included in the notice presents a case appropriate for review under common law *certiorari* and that failure to grant such review was an abuse of the court's discretion." 232 Ill. App. 3d at 852.

Procedurally, this case is before us on the Agency's motion to dismiss plaintiff's complaint which the circuit court granted. Therefore, on review, the question before us is whether, taking all well-pleaded facts as true, plaintiff's complaint failed to state a cause of action for which relief could be granted.

In addressing this question, we note that, although seeking various and alternative forms of relief, plaintiff's complaint, in essence, sought to obtain judicial review of the Agency's issuance of the 4(q) notice prior to the Agency's initiation of cost-recovery/enforcement proceedings before the Pollution Control Board (Board) or the circuit court. For the reasons that follow, we hold that such preenforcement review of the issuance of a 4(q) notice is not available to a 4(q) notice recipient, regardless of the form of relief sought by such parties.

Prior to addressing the question before us, it is

helpful to provide some background information concerning the Environmental Protection Act (Act) itself as well as the administrative bodies created by it. The Agency derives its authority from the Act. (Ill. Rev. Stat. 1991, ch. 111$^1$/$_2$, par. 1004.) The General Assembly enacted the Act to establish a unified, statewide program to restore, protect and enhance the quality of our State's environment. (Ill. Rev. Stat. 1991, ch. 111$^1$/$_2$, pars. 1002(a)(ii), (b).) A primary purpose of the Act is "to assure that adverse effects upon the environment are fully considered and borne by those who cause them." (Ill. Rev. Stat. 1991, ch. 111$^1$/$_2$, par. 1002(b).) The Act provides for a comprehensive scheme of, *inter alia*, environmental standards, regulations, permits and licensing, investigation and remedial procedures, cost-recovery and enforcement measures as well as civil and criminal penalties. (See Ill. Rev. Stat. 1991, ch. 111$^1$/$_2$, par. 1001 *et seq.*) Underlying the Act is a legislative policy of "respond now, litigate later." The provisions of the Act call for quick, effective response action when environmental pollution has been detected. As the court stated in *City of Quincy v. Carlson* (1987), 163 Ill. App. 3d 1049, 1053-54:

> "The legislative policy underlying the adoption of these strict measures is the protection and enhancement of the quality of the environment achieved through prompt alleviation of environmental damage which poses serious endangerment to the public health and welfare. The purpose of the Act is to quickly remove hazardous releases or the possibility of such a release with the burden of expense imposed upon the responsible party.
>
> * * *
>
> The potential release of hazardous waste into the environment is the very type of extraordinary or emergency situation which justifies a post-deprivation hearing. There is a strong public interest in protecting the public health and environment."

Within the framework of the Act, the General

Assembly created two bodies to implement the Act's comprehensive, statewide pollution control provisions: the Board and the Agency. (Ill. Rev. Stat. 1991, ch. 111¹/₂, pars. 1004, 1005.) The Board serves both quasi-legislative and quasi-judicial functions. (Ill. Rev. Stat. 1991, ch. 111¹/₂, par. 1005; *Environmental Protection Agency v. Pollution Control Board* (1981), 86 Ill. 2d 390, 399; *Landfill, Inc. v. Pollution Control Board* (1978), 74 Ill. 2d 541, 554-55.) The Agency, on the other hand, serves investigative, permitting and/or prosecutorial functions. (Ill. Rev. Stat. 1991, ch. 111¹/₂, par. 1004; *Landfill, Inc.*, 74 Ill. 2d at 554-55; *City of Waukegan v. Pollution Control Board* (1974), 57 Ill. 2d 170, 182.) The Agency is charged with investigating potential violations of the Act and prosecuting alleged violators of the Act before the Board (Ill. Rev. Stat. 1991, ch. 111¹/₂, pars. 1030, 1031(a)), or the circuit court (*People v. NL Industries, Inc.* (1992), 152 Ill. 2d 82). The Agency has the burden of proving violations of the Act and liability before the Board (Ill. Rev. Stat. 1991, ch. 111¹/₂, pars. 1032, 1033), or the circuit court (*NL Industries, Inc.*, 152 Ill. 2d at 100-01) and, in this regard, does not adjudicate any matters.

In serving its investigative function, the Agency is charged with the authority to investigate releases or substantial threats of a release of hazardous substances and to issue 4(q) notices to potentially responsible parties. Section 4(q) of the Act provides:

"The Agency shall have the authority to provide notice to any person who may be liable pursuant to Section 22.2(f) of this Act for a release or a substantial threat of a release of a hazardous substance or pesticide. Such notice shall include the identified response action and an opportunity for such person to perform the response action." (Ill. Rev. Stat. 1991, ch. 111¹/₂, par. 1004(q).)

Also relevant to this appeal, section 22.2(f) of the Act provides, in pertinent part:

"Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (j) of this Section, the following persons shall be liable for all costs of removal or remedial action incurred by the State of Illinois or any unit of local government as a result of a release or substantial threat of a release of a hazardous substance or pesticide:

(1) the owner and operator of a facility or vessel from which there is a release or substantial threat of release of a hazardous substance or pesticide." (Ill. Rev. Stat. 1991, ch. 111¹/₂, par. 1022.2(f).)

Pursuant to these provisions, the Agency issued the 4(q) notice to the plaintiff, National Marine, in the instant action.

Despite the legislative purpose of expedient containment and remediation of environmental pollution, plaintiff contends that it is entitled to preenforcement judicial review of the Agency's action in issuing the 4(q) notice *sub judice.* In support of its contention, plaintiff argues that it is suffering substantial injury in the form of an unconstitutional taking of its property because the 4(q) notice includes all 64 acres of its property, thereby decreasing the property value of the entire parcel, even though the Agency took samples from only a 12-acre portion of the property.

We reject plaintiff's argument and find that plaintiff's claim is not a controversy "ripe" for judicial resolution. This court has previously stated: "The basic rationale of the ripeness doctrine *** 'is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.' " (*Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 546, quoting *Abbott Laboratories v. Gardner* (1967), 387 U.S. 136, 148-49, 18 L. Ed. 2d 681, 691, 87 S. Ct. 1507, 1515.)

"The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories*, 387 U.S. at 149, 18 L. Ed. 2d at 691, 87 S. Ct. at 1515.

The 4(q) notice issued by the Agency to plaintiff is a preliminary notice of potential liability and constitutes merely a preliminary step in the Agency's investigation of possible violations of the Act. An agency's preliminary, investigative action is not a final agency decision ripe for judicial review. (See *Ewing v. Mytinger & Casselberry* (1950), 339 U.S. 594, 598, 600, 94 L. Ed. 1088, 1093, 1094, 70 S. Ct. 870, 872, 873.) Notifying a party that it is subject to an investigation which may potentially lead to the institution of an action against that party does not create a claim capable of judicial resolution. (*Ewing*, 339 U.S. at 598-99, 94 L. Ed. at 1093, 70 S. Ct. at 872-73; *Howlett v. Scott* (1977), 69 Ill. 2d 135, 142.) The 4(q) notice neither determines nor adjudicates the liability, rights, duties or obligations of the party subject to it. It merely puts the party "on notice" that it may be potentially liable under section 22.2(f) of the Act and requests that the party take certain response or remedial actions. (Ill. Rev. Stat. 1991, ch. 111$^{1/2}$, pars. 1004(q), 1031(d).) The party may then undertake the response action requested, may meet and attempt to settle with the Agency, or may choose to ignore the notice entirely. (Ill. Rev. Stat. 1991, ch. 111$^{1/2}$, par. 1031(d).) Issuance of the 4(q) notice is preliminary to any final determination of liability by an adjudicative body and neither disposes of the proceedings nor adjudicates legal duties or rights. As such, the issuance of a 4(q) notice is an interlocutory action and has no legal effect in and of itself. See *Ewing*, 339 U.S. at 598-99, 94 L. Ed. at 1093, 70 S. Ct. at 872-73.

The Agency's mere issuance of the 4(q) notice to plaintiff neither affects any of plaintiff's legal rights, as

plaintiff is still free to deal with its property as it sees fit, nor creates an actual controversy capable of judicial resolution or review. (*Williamson County Regional Planning Comm'n v. Hamilton Bank* (1985), 473 U.S. 172, 186, 87 L. Ed. 2d 126, 138-39, 105 S. Ct. 3108, 3116 ("a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue").) In order for a claim to be justiciable, an "actual controversy" must be shown to exist. As this court has previously explained:

> " ' "Actual" ' in this context does not mean that a wrong must have been committed and injury inflicted. Rather, it requires a showing that the underlying facts and issues of the case are not moot or premature, so as to require the court to pass judgment on mere abstract propositions of law, render an advisory opinion, or give legal advice as to future events. [Citations.] The case must, therefore, present a concrete dispute admitting of an immediate and definitive determination of the parties' rights, the resolution of which will aid in the termination of the controversy or some part thereof. [Citations.]" *Howlett v. Scott* (1977), 69 Ill. 2d 135, 141-42, quoting *Underground Contractors Association v. City of Chicago* (1977), 66 Ill. 2d 371, 375.

Plaintiff's complaint requests this court to render an advisory opinion concerning future events. No legal liability can be determined by the Agency upon issuance of the 4(q) notice; the authority to make that determination of liability, if it is ever even made, rests in the Board or the circuit court. It is before one of these adjudicative bodies that a final administrative or adjudicative decision may eventually be made. However, at this preliminary stage in the administrative process, it is not clear whether the Agency will even initiate a cost-recovery/enforcement proceeding against plaintiff before one of these bodies. Clearly, under these circum-

stances, plaintiff's complaint is premature. See *Howlett*, 69 Ill. 2d 135; *Schwanke, Schwanke & Associates v. Martin* (1992), 241 Ill. App. 3d 738, 747-48.

Additionally, allowing preenforcement judicial review of this preliminary action taken by the Agency while serving its investigative function would completely undermine the statutory scheme established by the General Assembly as well as the legislative purposes of the Act. The Act itself provides plaintiff with the opportunity of *de novo* review of the Agency's actions when and if the Agency brings a cost-recovery/enforcement proceeding before the Board or circuit court to determine whether plaintiff is legally liable for any violations of the Act. (See Ill. Rev. Stat. 1991, ch. 111½, pars. 1031, 1032.) In such a proceeding, the Agency has the burden of proving that plaintiff has caused or threatened to cause a violation of section 22.2(f) and that plaintiff is the owner or operator of a "facility" as defined in that section. (Ill. Rev. Stat. 1991, ch. 111½, pars. 1022.2(f), (h)(1), 1031(c).) The Act provides plaintiff with the opportunity to challenge, at that time, the Agency's determination that all 64 acres of its property constitute a "facility" and may make oral and written argument, offer testimony, cross-examine witnesses, or take any combination of these actions. (Ill. Rev. Stat. 1991, ch. 111½, par. 1032.) Thereafter, the Board must issue a final determination in the form of a written, published opinion. (Ill. Rev. Stat. 1991, ch. 111½, par. 1033(a).) This is the first layer of *de novo* review afforded to plaintiff by the statutory scheme.

If the adjudication of liability is adverse to plaintiff, it may *then* obtain judicial review of that order in the appellate court pursuant to the Administrative Review Law. (Ill. Rev. Stat. 1991, ch. 111½, par. 1041(a).) The appellate court's jurisdiction extends to all questions of law and fact presented on appeal. (Ill. Rev. Stat. 1991,

ch. 111$^{1}$/$_{2}$, par. 1041(d).) *This* is the stage in the administrative process at which the legislature has chosen to afford parties like plaintiff judicial review. Importantly, the legislature has provided that, where the Administrative Review Law has been expressly adopted by the statute creating the administrative agency, as in this case (Ill. Rev. Stat. 1991, ch. 111$^{1}$/$_{2}$, par. 1041(a)), "any other statutory, equitable or common law mode of review of decisions of administrative agencies heretofore available shall not hereafter be employed." Ill. Rev. Stat. 1991, ch. 110, par. 3—102; see *Dubin v. Personnel Board* (1989), 128 Ill. 2d 490, 497 (where Administrative Review Law has been adopted, it governs every action to review agency's decisions).

To allow preenforcement judicial review of the Agency's mere issuance of the 4(q) notice would undermine the statutory scheme of the Act. Affording plaintiff judicial review at this preliminary stage in the administrative process could potentially open the door and enable parties "to litigate separately every alleged error committed by an agency in the course of the administrative proceedings." *Dubin*, 128 Ill. 2d at 499; *cf. Illinois Bell Telephone Co. v. Allphin* (1975), 60 Ill. 2d 350, 357 ("unlimited freedom to seek judicial review of the merits of the issue before an agency has rendered a final administrative decision would severely undermine the legislative purpose manifest in [the Administrative Review Law's] enactment"); *Klein v. Fair Employment Practices Comm'n* (1975), 31 Ill. App. 3d 473, 483 ("[a]n efficient investigation obviously could not be achieved if every investigation could be controverted into a trial").

In addition, preenforcement judicial review of the issuance of a 4(q) notice would substantially thwart the legislative purpose of providing expedient containment of environmental pollution. Allowing this type of judicial review prior to the final stage of the administra-

tive process would substantially delay the quick, effective response action called for by the Act. The clean-up process could be delayed by months or even years at great cost to the environment and public health and safety. Such a result will not be countenanced by this court.

Because plaintiff's claim is premature and not ripe for judicial resolution and because allowing plaintiff judicial review at this preliminary stage in the administrative process would thwart the legislative intent and statutory scheme of the Act, we hold that the circuit court properly dismissed plaintiff's complaint in its entirety. Accordingly, we reverse that portion of the appellate court's order which partially reinstated plaintiff's complaint and we affirm the circuit court's dismissal of the entire complaint.

*Appellate court reversed in part and affirmed in part; circuit court affirmed.*