Filed 6/26/08          NO. 4-07-0976

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

CLEMENT JANDESKA,                          )    Appeal from
          Plaintiff-Appellant,             )    Circuit Court of
          v.                               )    Champaign County
PRAIRIE INTERNATIONAL TRUCKS, INC.,        )    No. 06L50
          Defendant-Appellee,              )
          and                              )
KEVIN LYONS and CHARLES FLICKNER,          )    Honorable
          Respondents in Discovery.        )    Michael Q. Jones,
                                           )    Judge Presiding.
_____

JUSTICE McCULLOUGH delivered the opinion of the court:

In May 2006, plaintiff, Clement Jandeska, filed an amended complaint based on a theory of retaliatory discharge against defendant, Prairie International Trucks, Inc. (Prairie). In November 2007, the trial court granted defendant's motion for summary judgment. Jandeska appeals. We affirm.

As the parties are well aware of the facts of this case, we address only those facts necessary to our disposition.

On October 4, 2005, Robbin Kurtsinger, a Prairie client, brought a diesel truck to Prairie to have repairs done to the vehicle. When she got the vehicle back, Kurtsinger concluded either the repairs were not done correctly or something else was wrong with the vehicle so she took the truck back to Prairie on October 10. Jandeska told Kurtsinger the repairs Kurtsinger had requested on October 4 were made but something had happened while the repairs were being made that caused the problem Kurtsinger was now experiencing. Between October 10 and 14, 2005, Prairie's

mechanics worked on the vehicle and fixed the problem. Prairie charged Kurtsinger its normal rate for these repairs. Jandeska allegedly told Kurtsinger the vehicle should be fixed at no cost because the problem was caused by Prairie leaving the glow plug in the engine in the first place. Kurtsinger relayed the information Jandeska had given her to Kevin Lyons, whom Kurtsinger believed to be Prairie's general manager. Around October 22, Kurtsinger complained to Charlie Flickner (general manager of Prairie's Champaign location) about the repairs. She told him one of the technicians told her a glow plug was left in her engine but she would not say who told her. At some point, Lyons became involved in the conversation. According to Kurtsinger, Lyons first denied Prairie had done anything to damage Kurtsinger's vehicle when it was in for repairs the first time, but he finally agreed it had been damaged and that it would be repaired at no cost to Kurtsinger.

Kevin Mitchaner owned his own trucking business and used Prairie whenever one of his vehicles needed repairs. In October 2005, Mitchaner needed a part for one of his vehicles, so he went to Prairie and dealt with Jandeska. Jandeska retrieved the part and began to "ring it into the computer" when the computer malfunctioned and would not print out an invoice with the correct part number and cost. Because Mitchaner was in a hurry and needed to take the part and leave as quickly as possible, Jandeska told him he would fill out an invoice by hand, get the part number and dollar amount later, and Mitchaner could pay

the next time he stopped at Prairie. On October 22, 2005, Mitchaner was back at Prairie. Jandeska was not there so Mitchaner spoke to Lyons about paying for the part. According to Mitchaner, Lyons got Jandeska's handwritten invoice, entered the information into the computer, and Mitchaner then paid for the part along with additional work he was having done at that time. On October 25, 2005, Prairie fired Jandeska.

In May 2006, Jandeska filed an amended complaint against Prairie based on a theory of retaliatory discharge. In June 2006, Prairie filed a motion to dismiss claiming the Automotive Repair Act (815 ILCS 306/1 through 85 (West 2004)) did not expressly or impliedly provide a cause of action in favor of Jandeska. Jandeska responded, stating he did not allege the Automotive Repair Act provided him with a private right of action. Instead, he cited the Automotive Repair Act to support his assertion false billing and improper car repairs are in violation of public policy. In July 2006, the trial court denied Prairie's motion following a hearing. Prairie filed a motion for interlocutory appeal and the court denied it. In October 2007, Prairie filed a motion for summary judgment, which the trial court granted in November 2007. This appeal followed.

Jandeska alleges Prairie discharged him for telling Kurtsinger she should not have had to pay for repairs to her truck because the repairs were only necessary because of a mistake by Prairie. Illinois adheres to the employment-at-will doctrine, where a noncontractual employee serves at the em-

- 3 -

ployer's discretion and can be discharged for any reason or no reason. Sherman v. Kraft General Foods, Inc., 272 Ill. App. 3d 833, 836, 651 N.E.2d 708, 710 (1995). Our supreme court created a limited exception to this rule when it recognized the tort of retaliatory discharge in Kelsay v. Motorola, Inc., 74 Ill. 2d 172, 181-82, 384 N.E.2d 353, 357 (1978). "A plaintiff states a valid claim for retaliatory discharge only if [he] alleges that [he] was (1) discharged; (2) in retaliation for [his] activities; and (3) that the discharge violates a clear mandate of public policy." Hinthorn v. Roland's of Bloomington, Inc., 119 Ill. 2d 526, 529, 519 N.E.2d 909, 911 (1988).

We conclude Jandeska has not stated a claim for retaliatory discharge because he cannot meet the third prong of the cause of action since Prairie's termination of Jandeska's employment did not violate a clear mandate of public policy. In doing so, we recognize the trial court denied Prairie's motion to dismiss based on this argument but ultimately granted Prairie summary judgment on other grounds. However, an appellate court may affirm the trial court's decision on any basis appearing in the record. American Service Insurance Co. v. Pasalka, 363 Ill. App. 3d 385, 389-90, 842 N.E.2d 1219, 1225 (2006).

In his amended complaint, Jandeska claimed it is the public policy of Illinois that (1) automotive repair facilities have a duty to properly repair vehicles and be honest with customers as to the necessity of repairs and the cause of damage to the vehicle, and (2) customers are not fraudulently charged in

- 4 -

connection with mechanical repairs and other work performed on their vehicles.  Jandeska cited section 80(6) of the Automotive Repair Act (815 ILCS 306/80(6) (West 2004)) as support for this claim.  That section makes it unlawful for a motor vehicle repair facility to charge a customer for unnecessary repairs.

> "'[U]nnecessary repairs' means those repairs for which there is no reasonable basis for performing the service.  A reasonable basis includes: (i) that the repair service is consistent with specifications established by law or the manufacturer of the motor vehicle, component, or part; (ii) that the repair is in accordance with usual and customary practices; (iii) that the repair was performed at the specific request of the consumer after the technician disclosed to the consumer the basis for recommending the repair when the recommendation is not in accordance with manufacturer specifications or accepted trade practices; or (iv) that the repair is at the consumer's request."  815 ILCS 306/80(6) (West 2004).

Our supreme court "has consistently sought to restrict the common[-]law tort of retaliatory discharge."  Metzger v. DaRosa, 209 Ill. 2d 30, 44, 805 N.E.2d 1165, 1173 (2004). Retaliatory discharge cases have been allowed under two circum-

- 5 -

stances: (1) when an employee has been fired for filing a claim for worker's compensation; or (2) when the employee is discharged for reporting an employer's illegal or improper conduct, otherwise known as "whistle blowing."  Jacobson v. Knepper & Moga, P.C., 185 Ill. 2d 372, 376, 706 N.E.2d 491, 493 (1998).  Jandeska's claim falls under the latter of these two categories.

As stated, Prairie's termination of Jandeska's employment did not violate a clear mandate of public policy.  Our supreme court has stated the following about what constitutes a mandated public policy:

"There is no precise definition of the term.  In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively.  It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions.  [Citation.]  Although there is no precise line of demarcation dividing matters that are the subject of public policies from matters purely personal, a survey of cases in other [s]tates involving retaliatory discharges shows that a matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed."  Palmateer v. International Har-

_vester Co._, 85 Ill. 2d 124, 130, 421 N.E.2d 876, 878-79 (1981).

"While the supreme court has not tried to spell out all circumstances that meet this threshold, it is clear from the words the court has chosen that the threshold is high and the circumstances limited."  _Chicago Commons Ass'n v. Hancock_, 346 Ill. App. 3d 326, 329, 804 N.E.2d 703, 705 (2004).

Here, given "whistle blowing" is an extraordinary exception to the employment-at-will doctrine, we cannot say that this matter strikes at Jandeska's "social rights, duties, and responsibilities."  Indeed, Jandeska simply told a client that he believed Prairie had failed to properly repair his vehicle.  Such action falls substantially short of the supreme court's public-policy threshold stated in _Palmateer_.

Although Jandeska claims he does not allege the Automotive Repair Act gives him a private right of action, we must address the statute because Jandeska relies on it as support for his claim there is a public policy Prairie violated when it terminated him.  It is undisputed the Automotive Repair Act does not explicitly give a private right of action to automotive repair facility employees who are wrongfully terminated from their employment.  In certain cases, it is appropriate to imply a private right of action for retaliatory discharge.  However, our supreme court has noted: "Given this court's reluctance to expand the common law in this area, we must also hesitate to imply such actions under a statute without explicit legislative authority."

<u>Fisher v. Lexington Health Care, Inc.</u>, 188 Ill. 2d 455, 468, 722 N.E.2d 1115, 1121 (1999).  The Automotive Repair Act does not confer a private right of action.

The <u>Fisher</u> court noted four factors are to be considered when determining whether a private right of action may be implied from a statute.  It is appropriate to imply a private right of action if (1) the plaintiff is a member of the class the statute was enacted to benefit; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute.

This statute was meant to protect the customers, not employees of automotive repair facilities.  Moreover, Jandeska's injury, <u>i.e.</u>, the loss of his job, is not the type of injury the statute was designed to prevent.  Thus, a private right of action cannot be implied from the statute.  Finally, providing a private right of action is not necessary to provide an adequate remedy for violation of the statute as section 85 of the Automotive Repair Act provides penalties for violations of the Act.  See 815 ILCS 306/85 (West 2004).

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

KNECHT and STEIGMANN, JJ., concur.

- 8 -