NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (4th) 210082-U

NO. 4-21-0082

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
November 18, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| AMERENENERGY MEDINA VALLEY COGEN, LLC, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| THE ILLINOIS ENVIRONMENTAL PROTECTION | ) | No. 20MR615 |
| AGENCY; JOHN J. KIM, in His Official Capacity as | ) | |
| Director of the Illinois Environmental Protection Agency; | ) | |
| and WILLIAM E. BUSCHER, P.G., in His Official | ) | |
| Capacity as Manager of the Hydrogeology and | ) | |
| Compliance Unit in the Illinois Environmental Protection | ) | |
| Agency's Bureau of Water, Division of Public Water | ) | Honorable |
| Supplies, | ) | Adam Giganti, |
| Defendants-Appellees. | ) | Judge Presiding. |

---

JUSTICE DeARMOND delivered the judgment of the court.
Justices Turner and Steigmann concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court affirmed, finding the circuit court did not err in dismissing for lack of ripeness plaintiff's declaratory action regarding the Illinois Environmental Protection Agency's assessment of fees for certain ash ponds located on plaintiff's properties, where plaintiff failed to establish the existence of an actual controversy ripe for judicial determination.

¶ 2   In July 2020, plaintiff, Amerenenergy Medina Valley Cogen, LLC, filed a

complaint for declaratory judgment, seeking the circuit court's declaration certain ash ponds

located on plaintiff's properties were not coal combustion residual (CCR) surface impoundments

as defined under section 3.143 of the Illinois Environmental Protection Act (Act) (415 ILCS

5/3.143 (West Supp. 2019)) and the issuance of a writ of *certiorari* to quash the Illinois Environmental Protection Agency's (IEPA) "Final Determination" letter.

¶ 3      In September 2020, defendants, the IEPA, John J. Kim, and William E. Buscher, P.G., filed a motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Civil Code) (735 ILCS 5/2-619.1 (West 2020)), arguing plaintiff's complaint did not present a ripe controversy and otherwise failed to state a claim entitling plaintiff to recover. In January 2021, the circuit court entered a written order granting defendants' motion to dismiss with prejudice.

¶ 4      Plaintiff appeals, arguing the circuit court erred by dismissing its complaint for declaratory judgment because the complaint (1) raised an issue ripe for judicial review, (2) alleged an actual controversy sufficient to state a viable cause of action for declaratory judgment, (3) sufficiently stated a violation under the Illinois Administrative Procedure Act (APA) (5 ILCS 100/1-1 *et seq.* (West 2018)), and (4) stated a claim for writ of *certiorari*. Because we find this case unripe for review, we affirm.

¶ 5                              I. BACKGROUND

¶ 6      Plaintiff is an Illinois limited liability company which owns property previously used to generate electricity, including coal-fired electric generating units located near Hutsonville and Meredosia, Illinois. To generate electricity, these power plants burned coal, which produced coal combustion byproducts, including sluiced fly ash and bottom ash. Plaintiff then stored or disposed of the residual byproducts in ash ponds—depressions in the land which are regulated as water treatment facilities used for the management of coal combustion byproducts—located at those properties.

¶ 7      Relevant to this appeal, section 3.142 of the Act provides, " 'CCR' means fly ash, bottom ash, boiler slag, and flue gas desulfurization materials generated from burning coal for

the purpose of generating electricity by electric utilities and independent power producers." 415 ILCS 5/3.142 (West Supp. 2019). Pursuant to section 3.143 of the Act, " 'CCR surface impoundment' means a natural topographic depression, man-made excavation, or diked area, which is designed to hold an accumulation of CCR and liquids, and the unit treats, stores, or disposes of CCR." 415 ILCS 5/3.143 (West Supp. 2019). Section 22.59(j) of the Act also provides, in relevant part, owners or operators of a CCR surface impoundment shall pay initial fees of $50,000 for each closed CCR surface impoundment and $75,000 for each CCR surface impoundment which has not completed closure. 415 ILCS 5/22.59(j)(1) (West Supp. 2019).

¶ 8　　　　Pursuant to these provisions, the IEPA issued a letter in June 2020, informing plaintiff it had made a "final determination" regarding three ash ponds located at plaintiff's Hutsonville power plant and two ash ponds located at plaintiff's Meredosia plant. The letter indicated the IEPA considered plaintiff's ash ponds to be CCR surface impoundments, as defined in section 3.143 of the Act, and subject to initial fees pursuant to section 22.59(j)(1) of the Act. The letter advised plaintiff failure to pay the fees may result in the issuance of a violation notice pursuant to section 31(a) of the Act (415 ILCS 5/31(a) (West 2018)).

¶ 9　　　　On July 27, 2020, plaintiff filed the instant complaint for declaratory judgment, challenging the IEPA's issuance of its June 2020 letter. In its complaint, plaintiff sought a declaration that sections 3.143 and 22.59(j) of the Act were inapplicable to the ash ponds identified in the IEPA's June letter because the ponds "did not store, treat, or dispose of CCR as of the effective date of the CCR law." Plaintiff further asserted "the IEPA's failure to adopt reasonable regulatory procedures and its unilateral and arbitrary application of the fee provisions constitute[d] invalid rulemaking" under the APA (5 ILCS 100/1-1 *et seq.* (West 2018)) and

sought the issuance of a writ of *certiorari* directing the IEPA "to withdraw, revoke, and/or disclaim the Final Determination Letter."

¶ 10      On July 28, 2020, the IEPA issued two violation notices to plaintiff pursuant to section 31(a)(1) of the Act (415 ILCS 5/31(a)(1) (West 2018)). The notices alleged violations of section 22.59(j) of the Act because plaintiff failed to submit initial fees for the five identified ash ponds after the IEPA determined they were CCR surface impoundments and subject to initial fees under that section. The notices stated, "Due to the nature and seriousness of the alleged violations, please be advised that resolution of the violations may also require the involvement of a prosecutorial authority for purposes that may include, among others, the imposition of statutory penalties."

¶ 11      In September 2020, defendants filed a motion to dismiss plaintiff's complaint pursuant to section 2-619.1 of the Civil Code (735 ILCS 5/2-619.1 (West 2020)), asserting (1) the dispute was not ripe for adjudication and (2) plaintiff failed to identify a cause of action or otherwise allege sufficient facts. Defendants argued plaintiff failed to establish an actual controversy between the parties as required to provide the circuit court with jurisdiction under section 2-701 of the Civil Code (735 ILCS 5/2-701 (West 2020)). Defendants contended the issues raised by plaintiff were not ripe for adjudication as the IEPA's June 2020 letter "was merely a preliminary step in an ongoing administrative process." Defendants also argued plaintiff's petition for a writ of *certiorari* was improper because the letter (1) was not issued through the exercise of quasi-judicial functions, (2) was not legally binding, and (3) had no effect on plaintiff or its properties. Further, "any effort to make the determination legally binding would require [the IEPA] to pursue enforcement measures before the [Pollution Control] Board [(Board)] or the circuit court, thus providing Plaintiff[ ] with meaningful judicial review."

¶ 12      In November 2020, plaintiff filed a response to defendants' motion to dismiss, asserting its complaint was ripe because the IEPA's June letter was a final decision by an administrative agency and its "plain language *** makes that point clear." Plaintiff further argued it adequately alleged a violation of section 10-55(c) of the APA (5 ILCS 100/10-55(c) (West 2018)), where defendants "created any number of different rules" to govern their conduct in collecting fees from plaintiff "under a new provision of the Act intended to prescribe fees for 'CCR surface impoundments.' " Finally, plaintiff asserted the issuance of a writ of *certiorari* was appropriate as the IEPA acted in a quasi-judicial function when it "issued its 'final determination' *** stating that the former ash ponds 'are CCR surface impoundments as defined in the *** Act.' "

¶ 13      In January 2021, the circuit court entered a written order granting defendants' section 2-619.1 motion to dismiss with prejudice. The court found, among other things, plaintiff's complaint "fail[ed] to establish the existence of an actual controversy ripe for judicial determination." The court determined the IEPA's June letter "was not a binding order or adjudication affecting Plaintiffs' rights or obligations." Rather, it "informed Plaintiff[ ] that [the IEPA] viewed its ash ponds as subject to regulation and notified Plaintiff[ ] that continued non-compliance could result in [the IEPA] initiating the enforcement process set out in Section 31(a) of the Act." The court also noted plaintiff failed to allege any harm resulting from the letter's issuance "other than possible future State enforcement pursuant to Section 31(a) of the Act."

¶ 14      This appeal followed.

¶ 15                    II. ANALYSIS

¶ 16    On appeal, plaintiff argues the circuit court erred by dismissing its complaint for declaratory judgment because the complaint (1) raised an issue ripe for judicial review, (2) alleged an actual controversy sufficient to state a viable cause of action for declaratory judgment, (3) sufficiently stated a violation of the APA, and (4) stated a claim for writ of *certiorari*. In response, defendants assert the court properly dismissed plaintiff's complaint in its entirety for lack of ripeness pursuant to section 2-619(a)(1) of the Civil Code, which provides for the dismissal of a claim where "the court does not have jurisdiction of the subject matter of the action." 735 ILCS 5/2-619(a)(1) (West 2020). Because plaintiff's complaint neither presents an issue fit for judicial decision nor alleges sufficient hardship of withholding court consideration, the matter is not ripe, and we affirm the circuit court's dismissal.

¶ 17                      A. Standard of Review

¶ 18    "A section 2-619 motion to dismiss admits the legal sufficiency of the plaintiff's claim, but asserts affirmative matter that defeats the claim." *Hubble v. Bi-State Development Agency of the Illinois-Missouri Metropolitan District*, 238 Ill. 2d 262, 267, 938 N.E.2d 483, 488 (2010). "Jurisdiction exists in a court of review only where the parties present a justiciable matter." *Sartwell v. Board of Trustees of Teachers' Retirement System of State of Illinois*, 403 Ill. App. 3d 719, 726, 936 N.E.2d 610, 617 (2010). "Concepts of justiciability are divided into different categories, such as advisory opinions, feigned and collusive cases, standing, ripeness, mootness, political questions, and administrative questions." *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488, 901 N.E.2d 373, 383 (2008). "Where a controversy is not ripe for review, it is not justiciable." *Sartwell*, 403 Ill. App. 3d at 726; see also *NDC LLC v. Topinka*, 374 Ill. App. 3d 341, 347, 871 N.E.2d 210, 215 (2007) ("The issue of ripeness is a question of subject matter jurisdiction."). The dismissal of a complaint based on the lack of subject matter jurisdiction is

reviewed *de novo*. *Leetaru v. Board of Trustees of the University of Illinois*, 2015 IL 117485, ¶ 41, 32 N.E.3d 583.

¶ 19                              B. Relevant Statutory Framework

¶ 20          The primary purpose of the Act is "to establish a unified, state-wide program supplemented by private remedies, to restore, protect and enhance the quality of the environment, and to assure that adverse effects upon the environment are fully considered and borne by those who cause them." 415 ILCS 5/2(b) (West 2020). "The Illinois legislature enacted section 31 of the *** Act to establish a prelitigation process for the alleged violators to meet and work with the [IEPA] to correct violations." *Illini Environmental, Inc. v. Illinois Environmental Protection Agency*, 2014 IL App (5th) 130244, ¶ 39, 18 N.E.3d 900. Under section 31(a)(1) of the Act, the IEPA, "[w]ithin 180 days after becoming aware of an alleged violation of the Act, *** shall issue and serve, by certified mail, upon the person complained against a written notice informing that person that the [IEPA] has evidence of the alleged violation." 415 ILCS 5/31(a)(1) (West 2018). "If the [IEPA] and the alleged violator are not able to reach an agreement, then sections 31(b) and (c) of the Act direct the [IEPA] to refer the case to the Attorney General or to a State's Attorney for prosecution." *Illini Environmental, Inc.*, 2014 IL App (5th) 130244, ¶ 39; 415 ILCS 5/31(b), (c) (West 2018). "If the adjudication of liability is adverse to plaintiff, it may *then* obtain judicial review of that order in the appellate court pursuant to the Administrative Review Law." (Emphasis in original.) *National Marine, Inc. v. Illinois Environmental Protection Agency*, 159 Ill. 2d 381, 391, 639 N.E.2d 571, 575 (1994); see also 415 ILCS 5/41(a) (West 2020) (stating "any party adversely affected by a final order or determination of the Board *** may obtain judicial review *** under the provisions of the Administrative Review Law").

¶ 21                                    C. Ripeness

¶ 22        Plaintiff argues the circuit court erred in dismissing its complaint for declaratory judgment due to lack of ripeness. A complaint for declaratory judgment is appropriate "only where an actual controversy exists and the party seeking relief has a tangible, legal interest in the controversy." *Illinois State Toll Highway Authority v. Amoco Oil Co.*, 336 Ill. App. 3d 300, 305, 783 N.E.2d 658, 662 (2003). To demonstrate an actual controversy, the plaintiff must show the issues raised in the declaratory action are not moot or premature. *Rockford Title Co. v. Staaf*, 275 Ill. App. 3d 476, 480, 654 N.E.2d 1106, 1109 (1995). Thus, plaintiff must demonstrate an actual controversy exists or, in other words, that the issue raised in the complaint for declaratory judgment is ripe for adjudication. See *Smart Growth Sugar Grove, LLC v. Village of Sugar Grove*, 375 Ill. App. 3d 780, 789, 873 N.E.2d 20, 28 (2007) (finding a controversy must be ripe before declaratory judgment is available).

¶ 23        "With respect to ripeness, [t]he basic rationale *** is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." (Internal quotation marks omitted.) *Bartlow v. Shannon*, 399 Ill. App. 3d 560, 568, 927 N.E.2d 88, 96 (2010). "To determine whether an issue is ripe, courts examine (1) the issue's fitness for judicial determination and (2) any hardship that would result from withholding a judicial ruling. [Citation.] An issue is not fit for judicial determination where an administrative decision has not been formalized and the parties would not feel the effects of the controversy's resolution. [Citation.]" *Sartwell*, 403 Ill. App. 3d at 726. "Thus, if the harm that a plaintiff claims is merely speculative or contingent, the claim is unripe and a court should not

decide it." *Smart Growth Sugar Grove, LLC*, 375 Ill. App. 3d at 789; see also *Shipp v. County of Kankakee*, 345 Ill. App. 3d 250, 255, 802 N.E.2d 284, 289 (2003) ("If the question of whether plaintiffs will suffer any infringement of their rights is speculative, *** the action for a declaratory judgment should be dismissed.").

¶ 24    Plaintiff contends its complaint is ripe for adjudication. In support of its argument, plaintiff primarily relies on *Alternate Fuels, Inc. v. Director of Illinois Environmental Protection Agency*, 215 Ill. 2d 219, 830 N.E.2d 444 (2004). According to plaintiff, it is in "functionally the same position" as the plaintiff in *Alternate Fuels, Inc.*, where our supreme court found the claim brought by Alternate Fuels (AFI) against the IEPA was ripe for judicial determination. *Alternate Fuels, Inc.*, 215 Ill. 2d at 231-32. AFI was a business that provided alternative fuel to customers in the form of shredded plastic agricultural containers. *Alternate Fuels, Inc.*, 215 Ill. 2d at 222. In July 1998, the IEPA issued a notice informing AFI its storing and treating "waste" without a permit was in violation of section 21(d)(1) of the Act (415 ILCS 5/21(d)(1) (West 1998)). *Alternate Fuels, Inc.*, 215 Ill. 2d at 226-27. The IEPA also alleged AFI was violating section 21(e) of the Act (415 ILCS 5/21(e) (West 1998)). *Alternate Fuels, Inc.*, 215 Ill. 2d at 227. Due to the IEPA's issuance of the violation notice, AFI alleged its primary investors withdrew their support and its primary supplier withdrew from its agreement with AFI. *Alternate Fuels, Inc.*, 215 Ill. 2d at 227. AFI then halted its operations and ceased all further fuel manufacturing. *Alternate Fuels, Inc.*, 215 Ill. 2d at 227.

¶ 25    In its complaint against the IEPA, AFI requested a declaration the materials it used were not "waste" because the materials had not been discarded. *Alternate Fuels, Inc.*, 215 Ill. 2d at 228. The IEPA moved to dismiss AFI's claim, arguing the case did not present an actual controversy ripe for judicial review because AFI failed to exhaust its administrative remedies.

*Alternate Fuels, Inc.*, 215 Ill. 2d at 228. The circuit court denied the IEPA's motion and later granted AFI's motion for summary judgment, "finding that the materials were not 'wastes' because they were not discarded." *Alternate Fuels, Inc.*, 215 Ill. 2d at 229.

¶ 26          Before the supreme court, the IEPA argued AFI's claim was not ripe because the IEPA had not concluded its investigatory process. *Alternate Fuels, Inc.*, 215 Ill. 2d at 230. After finding the issue fit for judicial review, the supreme court examined what, if any, hardship AFI would suffer if the court withheld its consideration. *Alternate Fuels, Inc.*, 215 Ill. 2d at 232. The court determined the IEPA's interpretation of the Act created a difficult situation for AFI. *Alternate Fuels, Inc.*, 215 Ill. 2d at 232-33. AFI could secure what it believed to be an unnecessary permit with the required local siting approval; it could continue its operations without a permit and risk prosecution and serious penalties; or it could shut down its operations. *Alternate Fuels, Inc.*, 215 Ill. 2d at 232-33. Following AFI's decision to halt operations and discontinue all further manufacturing, there was no further incentive for the IEPA to refer the alleged violation for prosecution because the alleged violation was no longer occurring. *Alternate Fuels, Inc.*, 215 Ill. 2d at 233. The supreme court determined if it withheld judicial review to AFI, it would essentially eliminate AFI's chances of getting a determination of whether it was in fact processing "waste" under the Act. *Alternate Fuels, Inc.*, 215 Ill. 2d at 233. The court further found:

> "The [IEPA]'s decision affected AFI in a concrete way; the notice
> of violation caused AFI to lose financing, lose its suppliers, and
> halt operations, thereby ending AFI's agreement with Illinois
> Power. Thus, AFI has already felt a direct and palpable injury and

has an immediate financial stake in the resolution of the instant action." *Alternate Fuels, Inc.*, 215 Ill. 2d at 233.

¶ 27　　　　The facts presented here do not place plaintiff in "functionally the same position" as AFI. Plaintiff's situation is not nearly as compelling as the situation AFI faced in *Alternate Fuels, Inc.* Here, the IEPA's issuance of its June 2020 letter neither caused plaintiff to lose financing nor affected plaintiff's day-to-day operations in any way. Nor has it forced plaintiff (1) out of business, (2) to make any adverse business decision, or (3) to refrain from any action. Unlike the plaintiff in *Alternate Fuels, Inc.*, plaintiff has not complied by paying the disputed fees, and the only hardship plaintiff alleges on appeal is that it is "*potentially* risking $100,000 in initial penalties," and possible penalties of up to $20,000 for each day the violations continue. (Emphasis added.) See 415 ILCS 5/42(a) (West 2020). In other words, plaintiff's harm is entirely speculative, and it has not felt the effects of the IEPA's June letter in a concrete way. See *Bartlow*, 399 Ill. App. 3d at 568. As stated above, "if the harm that a plaintiff claims is merely speculative or contingent, the claim is unripe and a court should not decide it." *Smart Growth Sugar Grove, LLC*, 375 Ill. App. 3d at 789.

¶ 28　　　　However, we find our supreme court's decision in *National Marine, Inc.* instructive. In *National Marine, Inc.*, the IEPA issued a notice advising the plaintiff it was potentially liable for a " 'release or a substantial threat of a release of a hazardous substance' " on its property. *National Marine, Inc.*, 159 Ill. 2d at 383. The notice was based on the IEPA's findings following an investigation, which revealed the property contained buried drums, tires, stained soil near an underground storage tank, and an abandoned well house. *National Marine, Inc.*, 159 Ill. 2d at 384. Thereafter, the plaintiff sought (1) a declaration the notice provision of the Act was unconstitutional, (2) injunctive relief enjoining the IEPA from enforcement arising

from the notice or relying on its factual findings, and (3) the issuance of a writ of *certiorari* to review the IEPA's record and quash the notice. *National Marine, Inc.*, 159 Ill. 2d at 384. In granting the IEPA's motion to dismiss the complaint, the circuit court found the plaintiff's claim was premature and failed to state a cause of action for which relief could be granted. *National Marine, Inc.*, 159 Ill. 2d at 384-85.

¶ 29　　　　　Ultimately, the supreme court determined the plaintiff's claim did not constitute a controversy ripe for judicial resolution. *National Marine, Inc.*, 159 Ill. 2d at 388. The court noted the IEPA's role was to investigate potential violations of the Act and prosecute violators before the Board, and the IEPA had no adjudicatory function. *National Marine, Inc.*, 159 Ill. 2d at 387. The court also found the plaintiff's complaint sought judicial review of the IEPA's notice prior to the IEPA's initiation of cost recovery or enforcement proceedings before the Board or the circuit court. *National Marine, Inc.*, 159 Ill. 2d at 390. Despite including the identified response action in the notice and an opportunity for the plaintiff to perform that action, the IEPA would have to prove a violation of the Act before the Board if the plaintiff did not voluntarily respond. *National Marine, Inc.*, 159 Ill. 2d at 391. Thus, the supreme court found the notice issued by the IEPA was "a preliminary notice of potential liability and constitute[d] merely a preliminary step in the [IEPA's] investigation of possible violations of the Act." *National Marine, Inc.*, 159 Ill. 2d at 389. The court explained further:

> "Notifying a party that is subject to an investigation which may
> potentially lead to the institution of an action against that party
> does not create a claim capable of judicial resolution. [Citations.]
> The *** notice neither determines nor adjudicates the liability,
> rights, duties or obligations of the party subject to it. It merely puts

the party 'on notice' that it may be potentially liable under *** the Act and requests that the party take certain response or remedial actions. [Citation.] The party may then undertake the response action requested, may meet and attempt to settle with the [IEPA], or may choose to ignore the notice entirely. [Citation.] Issuance of the *** notice is preliminary to any final determination of liability by an adjudicative body and neither disposes of the proceedings nor adjudicates legal duties or rights. As such, the issuance of [the] *** notice is an interlocutory action and has no legal effect in and of itself. [Citation.]" *National Marine, Inc.*, 159 Ill. 2d at 389.

As no legal liability was imposed on the plaintiff through the notice issued by the IEPA, the supreme court concluded no "actual controversy" existed. *National Marine, Inc.*, 159 Ill. 2d at 390. Accordingly, the supreme court found the IEPA's investigative action was not a final agency decision ripe for judicial review. *National Marine, Inc.*, 159 Ill. 2d at 390-91.

¶ 30        Here, we find the facts comparable to those presented in *National Marine, Inc.*, and thus, a similar result is warranted. Although plaintiff treats the IEPA's June letter as the equivalent of a "final administrative act," the letter was nothing more than a preliminary notice of potential liability for possible violations under the Act. Calling it "final" does not make it functionally so. As in *National Marine, Inc.*, the IEPA's letter did not adjudicate plaintiff's liability, rights, duties, or obligations. It merely informed plaintiff the IEPA considered five of plaintiff's ash ponds to be CCR surface impoundments and subject to initial fees under the Act. The IEPA's payment demand essentially requested that plaintiff pay the disputed initial fees or be potentially subject to the issuance of a violation notice pursuant to section 31(a) of the Act.

Upon receipt of the violation notices, plaintiff was free to undertake the requested response action, meet and attempt to settle with the IEPA, or ignore the notices entirely. *National Marine, Inc.*, 159 Ill. 2d at 389; see also 415 ILCS 5/31(b) (West 2020). Should plaintiff continue to contest the demand, the IEPA or the State would bear the burden of proving actual liability before the Board. See 415 ILCS 5/31(c) (West 2020). If the adjudication is adverse to plaintiff, it may then seek judicial review of that finding in the appellate court. See 415 ILCS 5/41(a) (West 2020). Thus, the IEPA's June 2020 letter could not have achieved the measure of finality necessary to become a formal administrative decision fit for judicial review because any determination made in the letter had no impact on the parties. See *National Marine, Inc.*, 159 Ill. 2d at 389.

¶ 31        Accordingly, we conclude the circuit court did not err in dismissing plaintiff's complaint for declaratory judgment in its entirety as unripe. As plaintiff failed to (1) present an issue fit for judicial determination and (2) demonstrate a sufficient hardship to render judicial review appropriate at this stage of the proceedings, plaintiff cannot establish an actual controversy between the parties which is ripe for adjudication. See *Schwanke, Schwanke & Associates v. Martin*, 241 Ill. App. 3d 738, 748, 609 N.E.2d 654, 661 (1992) ("If the complaint does not state facts sufficient to show ripeness, dismissal is proper."). Because we have found plaintiff's complaint seeking declaratory relief to be premature, we decline plaintiff's invitation to address the remaining issues. See *Jandeska v. Prairie International Trucks, Inc.*, 383 Ill. App. 3d 396, 398, 893 N.E.2d 673, 675 (2008) (stating the appellate court may affirm on any basis in the record).

¶ 32                                III. CONCLUSION

¶ 33      For the foregoing reasons, we affirm the circuit court's judgment. In doing so, we compliment and thank the circuit court for its thorough, well-written order. Such orders, carefully drafted and supported by citations, are of great assistance to courts of review.

¶ 34      Affirmed.