NO. 4-09-0810          Filed 8/12/10

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| CARL SARTWELL, | ) | Appeal from |
|      Plaintiff-Appellant, | ) | Circuit Court of |
|      v. | ) | Sangamon County |
| THE BOARD OF TRUSTEES OF THE TEACHERS' | ) | No. 09MR122 |
| RETIREMENT SYSTEM OF THE STATE OF | ) | |
| ILLINOIS, | ) | Honorable |
|      Defendant-Appellee. | ) | Peter C. Cavanagh, |
| | ) | Judge Presiding. |

_____

JUSTICE McCULLOUGH delivered the opinion of the court:

In February 2009, defendant, the Board of Trustees of the Teachers' Retirement System of the State of Illinois (Board), denied plaintiff, Carl Sartwell, $12,430.54 in salary credit toward his retirement pension for the conversion of noncreditable fringe benefits into salary in the 2005-06, 2006-07, and 2007-08 school years. The Board found that Sartwell failed to timely appeal a 2005 teachers' retirement system (retirement system) staff determination regarding the conversion and to rebut the presumption of conversion by clear and convincing evidence. On appeal, the circuit court of Sangamon County affirmed the Board's judgment.

Sartwell appeals, arguing (1) his appeal falls within

the six-month appeal period because the staff made a second determination of noncreditability in January 2008, within six months of his May 2008 appeal; (2) the 2005 letter violated his procedural-due-process rights because it failed to notify him it was an appealable staff determination; (3) his increase in salary did not violate the conversion rule; and (4) the conversion rule is arbitrary and therefore invalid. We affirm in part, reverse in part, and remand with directions.

In February 2004, Sartwell and the Board of Education of Rossville-Alvin Community Unit School District No. 7 (District) agreed to a three-year employment contract. The District hired Sartwell to work as the district superintendent and high school principal for three years beginning in the 2004-05 school year. Sartwell's total creditable earnings toward his retirement amounted to $88,010.98. That figure included $76,490 in salary and $3,600 toward a tax-deferred annuity, totaling $80,090. The District contributed 9.89% of his $80,090 salary into the retirement system, raising his total to $88,010.98 in creditable income. The District also paid $12,912.66 in noncreditable benefits for medical insurance for Sartwell and his family. After the 2004-05 school year, the District opted to close the high school due to financial pressures.

In August 2005, the District and Sartwell entered into a two-year contract for him to become the district superintendent and principal of the district's grade school beginning July 1, 2005. Sartwell's base salary rose to $85,000, while the tax-deferred annuity contribution rose to $5,600. His compensation totaled $90,600. The contract also cut the District's payment of medical insurance for Sartwell and his family. Sartwell's wife began a new job in 2005, at which she was able to purchase medical insurance for $4,930.56 per year. According to an affidavit from Sartwell, coverage through the District would have cost over $14,000 for the 2005-06 school year.

Sartwell reported his income to the Board as $104,441.52, although it is not clear how he arrived at that figure. The Board's records show that the District contributed 10.37% of Sartwell's $90,600 salary into the retirement system, which would amount to $100,000.22. The Board arrived at a total of $99,560.43 in reportable earnings, which would indicate the District contributed 9.89% of Sartwell's salary into the retirement system. In any case, the Board accepted Sartwell's figure and found that he received a raise of $12,430.54 from the 2004-05 to 2005-06 school years.

In November 2005, Sartwell received a copy of a letter

- 3 -

to the District from an employer services auditor employed by the retirement system.  The letter follows, in pertinent part:

"The [t]eachers' [r]etirement [s]ystem has reviewed the contracts submitted on Mr. Sartwell's behalf for the 2004-05 and 2005-06 school years.

[The retirement system] periodically reviews employer records to ensure that proper service credit and salary information are reported for its members.  ***

If there is a decrease in noncreditable compensation in the last seven creditable school years of employment, the [s]ystem considers the difference to have been converted into salary for the purpose of increasing final average salary.  ***

* * *

Based upon our review, it is our understanding that beginning with the 2005-06 school year, [the District] discontinued providing Mr. Sartwell with board-paid health insurance benefits.  Absent any documentation

- 4 -

to the contrary, [we] must presume the full family coverage previously paid by the [District] on Mr. Sartwell's behalf was converted to salary for the purpose of increasing final average salary. Such converted salary will be excluded from creditable earnings if Mr. Sartwell retires before the 2011-12 school year."

The letter also provided Sartwell with contact information for the retirement system employee who made the conversion determination. Sartwell did not respond to the letter until October 2007, when he sent a letter to the retirement system seeking to rebut the presumption of conversion communicated in the November 2005 letter. Sartwell alleged that the District stopped paying for benefits "to save a financially-ailing district a substantial amount of money and further, was pursuant to a change in family status."

In December 2007, Sartwell drafted another letter to the retirement system, which stated, in pertinent part, as follows:

"As an employee[,] the difference between the premium and the benefit provided by

my wife's employer had to be paid through payroll deduction, so the [District] opted to provide the cost of the insurance to me in the form of salary. The cost of the insurance to my wife was *** $2,881.58 annually. The cost of the insurance to the board would have exceeded $14,000 in annual premiums. Thus the [District] achieved a significant cost savings as a result eliminating [sic] the provision of the contract that provided for board-paid family health insurance. There is no additional 'side' payment to me for insurance nor was there ever one. ***

The remaining difference in salary that was provided the [s]uperintendent between the two contracts can be explained by a change in job responsibilities[,] or what I labeled a change 'in employment.' The [District] faced significant financial problems and declining enrollments. After considering all the options available to them, the [District] opted to reduce costs by deactivating Rossville-

Alvin High School and paying a negotiated tuition to two [h]igh [s]chools in neighboring districts to provide the educational services to Rossville-Alvin students.  At the time, the administration of the *** district consisted of one [g]rade [s]chool principal, one [h]igh [s]chool principal, and the [s]uperintendent.  As a result of the reorganization, only the [s]uperintendent would remain employed by the district.  The [s]uperintendent's job responsibilities were redefined to include responsibilities of the [g]rade [s]chool [p]rincipal.  The [D]istrict justified the additional compensation because the [s]uperintendent would assume the dual role."

In a January 2008 letter, retirement system staff rejected Sartwell's request.  The letter noted the existence of the November 2005 letter and characterized Sartwell's request as one to reconsider the prior decision.  On the merits, the retirement system found that neither cost savings and financial gain to the District nor Sartwell's change in job responsibilities

- 7 -

overcame the presumption of conversion.  In February 2008,
Sartwell received a letter from the general counsel of the
retirement system enclosing the rules for administrative review
of the January 2008 denial of his request.

Sartwell retired after the 2007-08 school year.
Pursuant to the retirement system's conversion finding, the
retirement system deducted $12,430.54 from Sartwell's reported
salary for the 2005-06 through 2007-08 school years.

In May 2008, Sartwell appealed the retirement system
staff's denial to the Board, which referred the matter to its
claims hearing committee.  Sartwell attached affidavits from
himself and Dennis Price, the president of the District's board
of education, to his appeal.  Sartwell's affidavit restated his
earlier arguments but also admitted that his insurance costs for
2005-06 were $4,930.56.  Price's affidavit stated as follows:

> "Sartwell's salary was increased *** for the
> purpose of compensating him fairly for assum-
> ing the duties of [g]rade [s]chool [p]rincip-
> al after the deactivation of the high school,
> and to reimburse Sartwell for the costs of
> the health insurance premiums he would be
> paying *** through his wife's employer."

The committee recommended upholding the staff decision to deduct $12,430.54 from Sartwell's creditable salary. The committee's written recommendation found that Sartwell failed to file a timely appeal and, in the alternative, his salary increase violated the conversion rule. Regarding timeliness, the committee found that the November 2005 letter constituted a staff disposition. Pursuant to section 1650.620 of Title 80 of the Illinois Administrative Code (Illinois Code) (80 Ill. Adm. Code §1650.620, as amended by 25 Ill. Reg. 203, 211 (eff. December 22, 2000)), Sartwell failed to file his appeal within the six-month period permitted for appeals of staff dispositions. The committee also found that the staff's continued correspondence with him did not waive the appeal period.

Regarding the conversion rule itself, the committee found Sartwell failed to overcome the presumption of conversion. First, the committee found Sartwell had different, rather than more, job duties as the superintendent and grade-school principal in 2005-06 as compared to his duties as superintendent and high-school principal in 2004-05. Second, the committee found that his wife's change in jobs was not a "change in family status." The committee defined a "change in family status" as a legal change, such as marriage or divorce.

In February 2009, the Board voted to adopt the committee's recommended decision. In September 2009, the circuit court affirmed the Board's decision.

This appeal followed.

Sartwell argues as follows: (1) he filed a timely appeal from the January 2008 rejection letter, (2) the failure to provide notice of the finality of the November 2005 letter and his appeal rights violated his procedural-due-process rights, (3) the Board erred when it determined he violated the conversion rule, and (4) the conversion rule is arbitrary and therefore invalid.

In an appeal from an administrative agency's decision, this court reviews the agency's determination, not that of the circuit court. Marconi v. Chicago Heights Police Pension Board, 225 Ill. 2d 497, 531, 870 N.E.2d 273, 292 (2006). In all administrative proceedings, the plaintiff bears the burden of proof. Marconi, 225 Ill. 2d at 532-33, 870 N.E.2d at 293. Based upon the question presented, this court reviews agency determinations under three distinct standards of review. The agency's interpretation of a statute or administrative rule is a question of law, which receives de novo review. Marconi, 225 Ill. 2d at 532, 870 N.E.2d at 293. The agency's factual determinations will be

upheld unless they are against the manifest weight of the evidence. Kouzoukas v. Retirement Board of the Policemen's Annuity & Benefit Fund, 234 Ill. 2d 446, 465, 917 N.E.2d 999, 1011 (2009). A finding is against the manifest weight of the evidence where the opposite conclusion is clearly apparent. Peacock v. Board of Trustees of the Police Pension Fund, 395 Ill. App. 3d 644, 652, 918 N.E.2d 243, 250 (2009). Finally, this court reviews mixed questions of fact and law under the clearly erroneous standard. See McKee v. Board of Trustees of the Champaign Police Pension Fund, 367 Ill. App. 3d 538, 543, 855 N.E.2d 571, 575 (2006). An administrative agency's decision is clearly erroneous where the reviewing court comes to the definite and firm conclusion that the agency has committed an error. Cinkus v. Village of Stickney Municipal Officers Electoral Board, 228 Ill. 2d 200, 211, 886 N.E.2d 1011, 1018 (2008). The clearly erroneous standard provides some deference based upon the agency's experience and expertise, falling between de novo and manifest-weight-of-the-evidence review. McKee, 367 Ill. App. 3d at 543, 855 N.E.2d at 575.

Sartwell argues that the court should apply a de novo standard of review because his argument involves the construction of "staff disposition" as used in section 1650.620 of the Illi-

- 11 -

nois Code (80 Ill. Adm. Code §1650.620, as amended by 25 Ill. Reg. 203, 211 (eff. December 22, 2000)).  To the extent the appeal involves the construction of "staff disposition," we agree.  The pertinent text of the rule follows:

> "Any member, beneficiary, annuitant[,] or employer may appeal a staff disposition of a claim or interpretation of the [Illinois Pension Code (Pension Code) (40 ILCS 5/1-101 through 24-109 (West 2004))] to the Board *** within [six] months after the staff disposition or interpretation, by filing a written request for an administrative review with the [e]xecutive [d]irector."  80 Ill. Adm. Code §1650.620, as amended by 25 Ill. Reg. 203, 211 (eff. December 22, 2000).

Neither party has provided a definition for "staff disposition" found in the Board's internal rules, the Illinois Code, or statute, and this court's own research reveals none.  Thus, we turn to principles of statutory interpretation.  Administrative regulations have the force and effect of law and are construed according to the same rules of construction governing the construction of statutes.  Kean v. Wal-Mart Stores, Inc., 235

- 12 -

Ill. 2d 351, 368, 919 N.E.2d 926, 936 (2009). The touchstone of construction is administrative intent. People v. Hanna, 207 Ill. 2d 486, 497, 800 N.E.2d 1201, 1207 (2003). The language of the regulation itself provides the best evidence of administrative intent. People ex rel. Madigan v. Illinois Commerce Comm'n, 231 Ill. 2d 370, 380, 899 N.E.2d 227, 232 (2008). Where the language of the regulation is clear and unambiguous, this court will apply it as written. Madigan, 231 Ill. 2d at 380, 899 N.E.2d at 232.

Black's Law Dictionary defines "disposition" as a "final settlement or determination." Black's Law Dictionary 505 (8th ed. 2004). Similarly, Merriam-Webster's Collegiate Dictionary defines "disposition" as a "final arrangement." Merriam-Webster's Collegiate Dictionary 335 (10th ed. 2000). Based upon those definitions, this court concludes that a "staff disposition" is a final determination or decision regarding an interpretation of the Pension Code or an administrative rule made by a member of the retirement system staff. Whether the November 2005 letter fell within the definition of "staff disposition" is reviewed under the clearly erroneous standard. McKee, 367 Ill. App. 3d at 543, 855 N.E.2d at 575.

The Board's determination that the November 2005 letter constituted a staff disposition was clearly erroneous. The

- 13 -

letter informed Sartwell that the retirement system had determined his salary increase violated section 1650.450 (80 Ill. Adm. Code §1650.450, as amended by 27 Ill. Reg. 1668, 1675-78 (eff. January 17, 2003)).  To fall within the definition of "staff disposition," the letter had to inform Sartwell in some manner of the decision's finality.  The November 2005 letter did not state that the decision was final.  Instead, the letter sought Sartwell's response and provided him with contact information for the employee who had made the decision.  It likewise did not provide time limits within which Sartwell had to respond.

Further, the November 2005 letter could not have achieved the measure of finality necessary to become a staff determination fit for judicial review following an appeal to the Board.  Jurisdiction exists in a court of review only where the parties present a justiciable matter.  In re M.W., 232 Ill. 2d 408, 424, 905 N.E.2d 757, 769 (2009).  Where a controversy is not ripe for review, it is not justiciable.  Morr-Fitz, Inc. v. Blagojevich, 231 Ill. 2d 474, 489, 901 N.E.2d 373, 384 (2008).  To determine whether an issue is ripe, courts examine (1) the issue's fitness for judicial determination and (2) any hardship that would result from withholding a judicial ruling.  Morr-Fitz, 231 Ill. 2d at 490, 901 N.E.2d at 384.  An issue is not fit for

- 14 -

judicial determination where an administrative decision has not been formalized and the parties would not feel the effects of the controversy's resolution.  Alternate Fuels, Inc. v. Director of the Illinois Environmental Protection Agency, 215 Ill. 2d 219, 231, 830 N.E.2d 444, 451 (2004).

Here, any determination made in November 2005 was not fit for judicial determination because it had no impact on the parties.  To violate the conversion rule, the change must take place within seven years of retirement.  80 Ill. Adm. Code §1650.450(c)(6), as amended by 27 Ill. Reg. 1668, 1677 (eff. January 17, 2003).  Until an employee makes the decision to retire, that date is not fixed.  The November 2005 letter had no financial impact on Sartwell.  It does not appear from this record that, for example, the Board returned a portion of the school district's contribution toward Sartwell's retirement paid for the 2004-05 and 2005-06 school years.  The Board accepted the entire contribution, and rightly so, because Sartwell could have retired following the 2011-12 school year.  In that event, the conversion rule would not have applied, and the instant dispute would not have arisen.

For those reasons, the November 2005 letter was not a staff determination.  Accordingly, the staff disposition did not

occur until January 2008, from which Sartwell filed a timely appeal to the Board. Because of our ruling, we need not determine whether the letter violated Sartwell's constitutional rights.

Sartwell next argues that the Board erred when it determined his salary increase violated the conversion rule. According to Sartwell, his wife's eligibility for health benefits through her new employer was sufficient to overcome the presumption of conversion. The Board argues that the change in employment of Sartwell's spouse did not constitute a "change in family status" overcoming the presumption of conversion.

The retirement system was created to provide retirement annuities and other retirement benefits for teachers. 40 ILCS 5/16-101 (West 2006). To determine the proper annuity for a retiring teacher, retirement system staff must determine a member's final average salary. See 40 ILCS 5/16-133(a)(B) (West 2006). "Final average salary" is defined as the average of the highest four consecutive years of salary within the last 10 years of creditable service, subject to the rules of the Board. 40 ILCS 5/16-133(b) (West 2006). "Salary" is defined as the "actual compensation received by a teacher during any school year and recognized by the [retirement] system in accordance with the

- 16 -

rules of the [B]oard." 40 ILCS 5/16-121 (West 2006). Section 1650.450(a) of the Illinois Code defines "salary" more specifically as "[a]ny emolument of value recognized by the [s]ystem that is received, actually or constructively, by a member in consideration for services rendered as a teacher." 80 Ill. Adm. Code §1650.450(a), as amended by 27 Ill. Reg. 1668, 1675 (eff. January 17, 2003). Subsections 1650.450(b) and (c) of the Illinois Code provide specific examples of compensation included and excluded from the calculation of final average salary. 80 Ill. Adm. Code §§1650.450(b), (c), as amended by 27 Ill. Reg. 1668, 1676-78 (eff. January 17, 2003). Section 1650.450(c)(6) excludes from the compensation of final average salary the following:

"Any amount paid in lieu of previously nonreportable benefits or reported in lieu of previously non-reported compensation where the conversion occurs in the last years of service and one of the purposes is to increase a member's average salary." 80 Ill. Adm. Code §1650.450(c)(6), as amended by 27 Ill. Reg. 1668, 1677 (eff. January 17, 2003). The conversion rule applies where (1) the member

receives a pay raise, (2) the raise was received in lieu of previously nonreportable benefits, (3) it occurred in the last years of service, and (4) one of the purposes of the raise was to increase average salary. 80 Ill. Adm. Code §1650.450(c)(6), as amended by 27 Ill. Reg. 1668, 1677 (eff. January 17, 2003). A presumption of conversion applies where, in the last seven years of service, nonreportable benefits exceed those of any subsequent year. 80 Ill. Adm. Code §1650.450(c)(6), as amended by 27 Ill. Reg. 1668, 1677 (eff. January 17, 2003). Where the presumption of conversion arises, the member must prove by clear and convincing evidence that "none of the purposes of the change in compensation structure was to increase average salary." 80 Ill. Adm. Code §1650.450(c)(6), as amended by 27 Ill. Reg. 1668, 1677 (eff. January 17, 2003). The regulation then gives three examples of changes that would rebut the presumption of conversion: changes in a collective-bargaining agreement applicable to all similarly situated individuals, change of employer, and change in family status. 80 Ill. Adm. Code §1650.450(c)(6), as amended by 27 Ill. Reg. 1668, 1677-78 (eff. January 17, 2003).

Again, where the language of a regulation is unambiguous, it must be given its plain and ordinary meaning. Madigan, 231 Ill. 2d at 380, 899 N.E.2d at 232. On the other hand, where

a regulation's language is ambiguous, this court must resort to other methods of statutory interpretation. County of Du Page v. Illinois Labor Relations Board, 231 Ill. 2d 593, 604, 900 N.E.2d 1095, 1101 (2008). A statute is ambiguous where it is capable of more than one reasonable interpretation. County of Du Page, 231 Ill. 2d at 604, 900 N.E.2d at 1101.

In its written decision, the Board wrote that a "change in family status" was limited to a change in the composition of the family unit. Its examples included marriage, divorce, birth of a dependent child, or loss of a dependent child. It specifically stated that a "change in the employment of a spouse is not a change in the family status." The Board argues that this court should defer to its interpretation of "change in family status" because it is the agency charged with the rule's enforcement. "It is generally recognized that courts will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with the administration and enforcement of the statute." Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n, 95 Ill. 2d 142, 152, 447 N.E.2d 295, 300 (1983). An agency's interpretation expresses an informed opinion on legislative intent, based upon expertise and experience. Abrahamson v. Illinois Department of Professional Regulation, 153

Ill. 2d 76, 98, 606 N.E.2d 1111, 1121 (1992).  However, a court is not bound by an agency's erroneous interpretation of a statute or administrative regulation, no matter how long the interpretation has persisted.  <u>Abrahamson</u>, 153 Ill. 2d at 97, 606 N.E.2d at 1121.

The regulation is unambiguous.  The regulation's plain language does not limit the member's methods of proof to one of the enumerated examples.  The examples show the types of proof a member could offer to rebut the presumption of conversion.  See Merriam-Webster's Collegiate Dictionary 402 (10th ed. 2000) (defining "example" as "one that serves as a pattern to be imitated").  The examples are not the only methods of rebutting the presumption of conversion.  The member may prove through any evidence and by any reasoning that none of the purposes of the change in compensation structure was to increase average compensation.  Our conclusion leads to two questions: (1) whether the term "change in family status" includes a change in employment of a member's spouse; and (2) whether Sartwell has rebutted the presumption of conversion.

"Change in family status" is ambiguous.  It is not defined in the regulation itself, nor is it a term of art.  However, it is defined in two other subsections of Title 80 of

the Illinois Code to describe events permitting a health-care-benefit election change outside an open enrollment period for state employees. See 80 Ill. Adm. Code §2110.30(a), as amended by 31 Ill. Reg. 352, 357 (eff. December 28, 2006); 80 Ill. Adm. Code §2120.30(a), as amended by 30 Ill. Reg. 15119, 15124 (eff. September 6, 2006). Section 2120.30(a) defines the term as follows:

> "'Change in Family Status' means marriage, divorce, death of spouse or dependent, birth or adoption of child, commencement or termination of employment of spouse, significant change in cost or benefits coverage of the [employee] or spouse due to the spouse's employment, switch from full-time to part-time status of spouse, or from part-time to full-time, or unpaid leave of absence of [employee] or spouse, or any other events that the Department [of Central Management Services] determines constitute a change in family status." (Emphasis added.) 80 Ill. Adm. Code §2120.30(a), as amended by 30 Ill. Reg. 15119, 15124 (eff. September 6, 2006).

- 21 -

Section 2110.30 deals with dependent-care-reimbursement plan election changes and defines a "change in family status" to include the termination of a spouse's employment, although not the commencement of a spouse's employment. 80 Ill. Adm. Code §2110.30(a), as amended by 31 Ill. Reg. 352, 357 (eff. December 28, 2006). Many other states have defined "change in family status" to include a change in the employment status of a covered employee's spouse. See, e.g., S.D. Codified Laws §3-12A-28 (Michie 2009) (including spouse's change of employment status as a "change in family status"); 805 Mass. Code Regs. §9.04(1) (2009); W. Va. Code §151-1-2.1(a) (2009) (adopting attachment including spouse's change of employment as change in family status). But see Wash. Adm. Code §182-26-325(1)(b) (2008) (excluding spouse's change in employment status as change in family status).

Title 26, section 1.125-4(c), of the Code of Federal Regulations (Federal Code) (26 C.F.R. §1.125-4(c) (2008)) also defines change-in-status events upon which the state health-care election change events are based. Change-in-status events permit taxpayers revoking a health-care plan in a cafeteria-style election system during a period of coverage to exclude from taxable income the full premium. See 26 C.F.R. §1.125-4 (2008).

- 22 -

Change in status includes a change in legal marital status, number of dependents, residency, and employment status. 26 C.F.R. §1.125-4(c)(2) (2008). Employment status changes apply to the employee, his spouse, and his dependents and include "a termination or commencement of employment; a strike or lockout; a commencement of or return from an unpaid leave of absence; and a change in worksite." 26 C.F.R. §1.125-4(c)(2)(iii) (2008). At least two states have defined change-in-status events qualifying for a change-of-benefit election in lockstep with the Federal Code. See Ky. Rev. Stat. Ann. §18A.227(1)(d) (2009); N.J. Admin. Code §17:1-13.5(e) (2009).

Including a change in a spouse's employment status as a "change in family status" event also furthers the Board's specific intent in promulgating the conversion rule. As the regulation itself states, conversion is impermissible where "one of the purposes is to increase a member's average salary." 80 Ill. Adm. Code §1650.450(c)(6), as amended by 27 Ill. Reg. 1668, 1677 (eff. January 17, 2003). The regulation's language shows the Board's intent to exclude illegitimate increases, those designed to circumvent the conversion rule, from the consideration of final average salary. The converse is true as well. Where the parties lacked the intent to artificially increase final average salary,

- 23 -

the regulation permits converted benefits to be considered in the calculation of final average salary. The intent to artificially increase salary is based upon an intent to retire, which has no relation to a change in the employment status of a member's spouse.

Based upon the state and federal definitions of "change in family status" and the purpose of the rule, we conclude that a change in the employment status of a member's spouse falls within the definition of "change in family status" of section 1650.450(c)(6) (80 Ill. Adm. Code §1650.450(c)(6), as amended by 27 Ill. Reg. 1668, 1678 (eff. January 17, 2003)). Here, Sartwell's wife took a new job with Carle Clinic with health insurance available at a lower cost than the school board could offer. In response, the school board increased Sartwell's salary to reimburse him $4,930.56 for the cost of health insurance for the 2005-06 school year. The change in employment was a "change in family status" and rebutted the presumption of conversion contained in the regulation. The $4,930.56 raise in 2005-06, and any subsequent increases in the annual cost of health insurance over the two following years, should have been included in the calculation of his final average salary. The Board erred when it

excluded those amounts as converted.

Turning to the balance of the 2005-06 raise, $7,499.98, Sartwell wrote in his February 2008 letter that it was meant to compensate him for increased duties as the district superintendent and grade-school principal from the 2005-06 through 2007-08 school years. In the 2004-05 school year, Sartwell worked as the district superintendent and principal of the high school. The Board found that his duties were different, but not increased, as a result of becoming the grade-school principal. Sartwell remained a superintendent of a school district and the principal of a school. His primary duties stated in the February 2004 and August 2005 contracts were exactly the same. Before the Board, Sartwell alleged that he had increased duties starting in the 2005-06 school year, but the record does not show precisely what those duties were. The Board's factual finding that Sartwell did not have increased job duties was not against the manifest weight of the evidence.

According to the dissent, Sartwell had increased job duties because he had to administer the grade school without the assistance of a grade school principal or high school athletic director. The record does not support those assertions. In 2004-05 Sartwell was the district superintendent and principal of

the high school.  In 2005-06, he was the district superintendent and principal of the grade school.  While the district had fewer administrative staff members, it also had one less school, and Sartwell remained the principal of only one school.  With respect to the high school athletic director, the record is devoid of facts showing the functions, if any, that he performed in the grade school.  Based upon this record, the Board's conclusion was not clearly incorrect.  Accordingly, the Board did not err when it determined that Sartwell failed to overcome the presumption of conversion with respect to the remaining $7,499.98 by clear and convincing evidence.

Sartwell finally argues that the conversion rule is invalid because it does not reasonably relate to the Pension Code (40 ILCS 5/1-101 through 24-109 (West 2004)).  Specifically, Sartwell contends that the Board does not possess the authority to limit creditable salary increases because the legislature has already done so in the Pension Code.  The Board argues that the conversion rule is not unreasonable or arbitrary simply because the legislature has imposed caps on creditable salary increases.

An administrative regulation will not be invalidated unless it is arbitrary, unreasonable, or capricious.  Begg v. Board of Fire & Police Commissioners of the City of Park Ridge,

99 Ill. 2d 324, 331-32, 459 N.E.2d 925, 928 (1984).

Illinois Code section 1650.450 covers different subject matter than Pension Code sections 16-133(b) and 16-158(f). Sections 16-133(b) and 16-158(f) of the Pension Code regulate the State's and employer's fiscal liability with respect to a member's salary increase. Section 16-133(b) (40 ILCS 5/16-133(b) (West 2004)) excludes all salary increases over 20% in any given year from the calculation of final average salary. Section 16-158(f) (40 ILCS 5/16-158(f) (West Supp. 2005)) requires employers to pay contributions to the retirement system for all salary increases over 6% granted to members.

On the other hand, section 16-121 of the Pension Code directs the Board to define "salary" for the purpose of fixing contributions due to the retirement system. 40 ILCS 5/16-121 (West 2004). Section 1650.450 of the Illinois Code (80 Ill. Adm. Code §1650.450, as amended by 27 Ill. Reg. 1668, 1675-78 (eff. January 17, 2003)) defines "salary" pursuant to that directive. Section 1650.450(c)(6) excludes from the definition of "salary" any compensation paid in lieu of previously nonreported fringe benefits, such as health insurance. 80 Ill. Adm. Code §1650.450(c), as amended by 27 Ill. Reg. 1668, 1677-78 (eff. January 17, 2003).

The Pension Code sections regulate contributions while the Illinois Code section defines "salary."  For example, an employee might receive both a raise and convert certain benefits, such as health insurance, into salary for the purpose of increasing final average salary.  The converted amount does not constitute "salary."  Converted benefits are, by definition, not "salary" and not covered by the cited sections of the Pension Code.  Therefore, section 1650.450(c)(6) of the Illinois Code is not unreasonable or arbitrary.

The Board erred when it found Sartwell's appeal untimely and excluded the amount paid to him toward the purchase of health insurance for the school years 2005-06 through 2007-08. Those amounts were paid pursuant to a change in family status and should have been included in the calculation of his final average salary.  Because the record does not show the amount Sartwell paid for health insurance in the 2006-07 and 2007-08 school years, we remand to the Board with instructions to hold a hearing to determine the amounts paid toward health insurance premiums in those years, which are to be included in the calculation of his final average salary.

Affirmed in part and reversed in part; cause remanded with directions.

- 28 -

POPE, J., concurs.

MYERSCOUGH, P.J., specially concurs in part and dissents in part.

PRESIDING JUSTICE MYERSCOUGH, specially concurring in part and dissenting in part:

I respectfully specially concur in part and dissent in part. I agree Sartwell's request for administrative review was timely and the change in employment was a change in family status. However, the fact Sartwell received a raise resulting in an increase in salary does not prevent Sartwell from overcoming the presumption of conversion. All conversions result in an increase in income. But not all of those increases can overcome the presumption. According to Sartwell's affidavit, he had increased job duties as grade-school principal and no longer was aided by a principal and athletic director and had less staff support. He also had 200 additional students.

> "4. In 2005, I renegotiated a new employment contract with the Board (hereinafter '2005 Contract'), which superceded the 2004 Contract. I renegotiated my employment contract in 2005 because (1) the District was deactivating the high school due to financial problems, (2) I was taking on the additional responsibilities of the Grade School Principal, and (3) I wanted to

- 30 -

present the Board with a less costly health insurance option that I had access to through my wife's new employer.

5. Before the high school was deactivated, I was responsible for supervising the operations of the high school, which had an enrollment of approximately 100 students. I was assisted in this duty by the high school Principal and the high school Athletic Director.

6. After the high school was deactivated, I became responsible for supervising the operation of the grade school, which had an enrollment of approximately 300 students, in addition to my duties as Superintendent. The High School Principal, Athletic Director, and Grade School Principal positions were cut as part of the high school deactivation. As a result, I had much less staff support in my administrative role over the grade school than I had at the high school.

9. It was the understanding between myself and the Board that the only purposes for my salary increase in my 2005 Contract were to compensate me for my new administrative role as Principal for the grade school and to reimburse me for the cost of my wife's much cheaper health insurance premiums, since her employer could not deduct the amount from my paycheck directly."

Further, Dennis Price, President of the Board of Education, testified in his affidavit, the increase in salary was for the additional duties and the Board did not contemplate retirement before the 2011-12 school year.

"7. It was the collective understanding of the Board that Sartwell's salary was increased between the 2004 Contract and the 2005 Contract for the purpose of compensating him fairly for assuming the additional duties of Grade School Principal after the deactivation of the high school, and to reimburse Sartwell for the costs of the

health insurance premiums he would be paying
to obtain family health insurance coverage
through his wife's employer.

8. At the time Sartwell's contract was negotiated in 2005, the Board did not contemplate that Sartwell would be retiring before the 2011-2012 school year."

Sartwell has clearly rebutted the presumption of conversion as to $12,430.54.

For these reasons, I would reverse.