# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Prazen v. Shoop*, 2012 IL App (4th) 120048

---

| | |
|---|---|
| Appellate Court Caption | JOSEPH E. PRAZEN, Plaintiff-Appellant, v. MARVIN SHOOP, JR., as President of the Board of Trustees of The Illinois Municipal Retirement Fund; THE BOARD OF TRUSTEES OF THE ILLINOIS MUNICIPAL RETIREMENT FUND; THE ILLINOIS MUNICIPAL RETIREMENT FUND; and LOUIS W. KOSIBA, as the Executive Director of the Illinois Municipal Retirement Fund, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-12-0048 |
| Argued<br>Filed | August 7, 2012<br>August 31, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The Board of Trustees of the Illinois Municipal Retirement Fund lacked the authority to make the determination that the corporation created by plaintiff near the time of his retirement from his supervisory position with a municipality was a guise to circumvent the return-to-work provisions set forth in section 7-141.1(g) of the Pension Code; therefore, the order requiring plaintiff to return the early retirement incentives he received was vacated. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 11-MR-427; the Hon. John Schmidt, Judge, presiding. |

| | |
|---|---|
| Judgment | Reversed; IMRF Board's decision vacated. |
| Counsel on Appeal | James G. Fahey (argued) and Jeffrey T. Baker, both of Sorling Northrup, of Springfield, for appellant. |
| | Beth Janicki Clark (argued), of Illinois Municipal Retirement Fund, of Oak Brook, for appellees. |
| Panel | JUSTICE KNECHT delivered the judgment of the court, with opinion. Justices Steigmann and Pope concurred in the judgment and opinion. |

## OPINION

¶ 1    Plaintiff, Joseph E. Prazen, appeals the trial court's judgment affirming the decision of the Illinois Municipal Retirement Fund (IMRF) Board of Trustees (IMRF Board) finding plaintiff forfeited his early retirement incentives by returning to work for an IMRF employer in violation of section 7-141.1(g) of the Illinois Pension Code (Pension Code) (40 ILCS 5/7-141.1(g) (West 2010)). Specifically, the IMRF Board found forfeiture of plaintiff's early retirement incentives and the return of $307,100.50 was appropriate after it determined plaintiff's corporation was created solely as a guise to circumvent the return-to-work restrictions of the Pension Code.

¶ 2                                 I. BACKGROUND

¶ 3              A. ERI Retirement and Formation of Electrical Consultants, Ltd.

¶ 4    Joseph E. Prazen retired from his position as superintendent of the electric department for the City of Peru, Illinois (City), under the early retirement incentive (ERI) plan previously adopted by the City pursuant to section 7-141.1 of the Pension Code (40 ILCS 5/7-141.1 (West 1998)). He retired on December 31, 1998, after purchasing five years' age-enhancement credit resulting in a pension based on 32.833 years of service rather than 27.333 years. At the time of retirement, his annual salary was $82,284.20.

¶ 5    Three years prior, in 1995, Prazen formed a business, Peru Development Land Trust (PLDT), with then-mayor Donald Baker and Joe Hogan. The purpose of PLDT was to renovate and convert real estate in Peru, Illinois. In 1995, PLDT purchased a vacant building with the intention of turning it into condominiums. The renovation required extensive electrical upgrades and modifications. Prazen planned to perform this work under the auspices of his then-unincorporated business, Electrical Consultants, Ltd. (ECL).

¶ 6 On December 18, 1998, 13 days prior to his retirement, Prazen incorporated ECL. At the time of incorporation, he was the secretary and president of ECL. (In 2003, Prazen's wife, Diane, took over as secretary and president.) On December 21, 1998, three days after ECL's incorporation and 10 days prior to his retirement, ECL and the City entered into a management and supervision agreement for operation of the electric department (Agreement) to begin on January 1, 1999, one day after Prazen retired.

¶ 7 Pursuant to the Agreement, ECL was to provide a full-time person to perform the contractor's duties for the City for a term of three years, with the first year of compensation set at $89,816.74 to be paid on a biweekly basis to ECL. The Agreement stated, "All work, services, and other functions furnished or to be performed by [ECL] for the City *** shall be in [ECL's] position as an independent contractor and to no extent and in no manner shall either [ECL] or any of its personnel *** be regarded as an employee, servant, or agent of the City." The Agreement gave the City the right to terminate the Agreement "upon reasonable cause determined within the City's sole discretion" following a 30-day written notice to ECL. The Agreement between ECL and the City was extended eight times following the initial 1999 Agreement.

¶ 8 ECL employed three people during its life, Prazen, his wife Diane, and their daughter, Natalie. The City paid ECL biweekly as required by the Agreement. ECL then paid its employees. Prazen, Diane, and Natalie received W-2 forms from ECL for each year they worked for the corporation.

¶ 9 On February 17, 2009, ECL informed the City in writing it would be terminating the Agreement effective March 18, 2009, as allowed by the eighth rider extending the Agreement. ECL was voluntarily dissolved on November 30, 2009.

¶ 10                           B. Correspondence From Plaintiff's Attorney

¶ 11 In 1998 and twice in 2002, Prazen's attorney, Douglas Schweickert, who was also outside legal counsel for the City, contacted IMRF on Prazen's behalf to inquire about any impact the Agreement may have on his pension. We note defendants assert Schweickert was the City attorney and not Prazen's personal attorney. Schweickert was acting as plaintiff's agent when he contacted IMRF. Thus, it is irrelevant in what official capacity he initiated the discussion with IMRF. Schweickert documented these conversations with IMRF in three letters he wrote to Prazen.

¶ 12 The first letter dated September 15, 1998–two months before ECL's incorporation and approximately 2 1/2 months before Prazen's retirement from the City–stated Schweickert had spoken with an IMRF representative, who advised him "a former employee who elected the IMRF Early Retirement Incentive may work for a non-IMRF employer who contracts for services with an IMRF employer." Schweickert advised against this, but he noted the IMRF representative also stated "a former employee may also contract with an IMRF employer as an independent contractor."

¶ 13 In the second letter dated March 21, 2002, Schweickert informed Prazen he contacted IMRF per Prazen's request and confirmed everything set forth in the 1998 letter still applied.

¶ 14 In the last letter dated November 19, 2002, Schweickert explained as follows:

"[The IMRF representative] confirmed that a retired 'early out' IMRF employee may work for a separate corporation which is then contracted to do work for the City from which the IMRF employee retired. I specifically questioned whether that retired IMRF employee may be an owner of the corporation contracting with the City. She stated that was permiss[i]ble, but she added that the corporation cannot just be a guise to avoid the IMRF regulations. Specifically, if the corporation hires itself out to the general public in addition to the municipality for which it has contracted, that would be fine."

Schweickert suggested Prazen should run some advertisements to expand ECL's visibility and hire other employees, even if only for brief assignments.

¶ 15                    C. IMRF's Actions and Proceedings

¶ 16        On November 5, 2010, nearly one year after ECL was dissolved and almost 12 years after Prazen retired, general counsel for IMRF notified Prazen by letter the IMRF staff determined his continued relationship with the City after his 1999 retirement violated the provisions of subsection 7-141.1(g) of the Pension Code (40 ILCS 5/7-141.1(g) (West 1998)). Subsection 7-141.1(g) prohibits an ERI participant from returning to work for any IMRF employer, subject to a few exceptions. *Id.* Attached to the letter were new calculations based on Prazen's retirement at 27.333 years and showing a $307,100.50 overpayment as a result of plaintiff's ERI violation. The letter did not state how IMRF would collect the overpayment from Prazen.

¶ 17        On November 6, 2010, Prazen notified IMRF of his intent to appeal. The IMRF benefit review committee conducted hearings on June 23, 2011, and July 21, 2011. Prior to the first hearing, Prazen's attorney submitted a statement arguing the following: (1) the IMRF Board does not have authority under article 7 of the Pension Code to determine who qualifies as an "employee"; (2) if the IMRF Board does have the authority, plaintiff does not fall within the definition of "employee" as defined in article 7; (3) the IMRF lacks legal authority to look beyond the corporation contracting with the City; and (4) recent changes to the Pension Code and IMRF position paper support finding Prazen was not violating provisions of the Pension Code.

¶ 18        The findings and conclusions of the IMRF benefit review committee were as follows:

"[(1)] Despite the failure of staff to provide a copy of their original memo and Public Power Weekly to [plaintiff's] counsel prior to the June 23rd meeting, [plaintiff] and his attorney were later provided with these documents and were given adequate notice and opportunity to respond at the July 21st hearing.

[(2)] This is not a matter requiring 'piercing the corporate veil'. It is within the Board's power to make administrative decisions concerning participation and coverage and to carry out the intent of the Fund in accordance with Article 7 of the Pension Code. (40 ILCS 5/7-200).

[(3)] The ability of the Board to determine whether or not [plaintiff] is an employee is irrelevant to this proceeding because no such determination is being made.

[(4)] The recent changes to Section 7-141(g) [adding an exception for auxiliary police

-4-

officers] of the Pension Code and Staff's position paper regarding HB 45 are irrelevant to this matter.

[(5)] Under the facts of this appeal, [plaintiff] violated the provisions of Section 7-1419[.1](g) because EC[L] was created as a guise to avoid the return to work prohibitions contained therein. More specifically, [plaintiff's] actions are contrary to the intent of the return to work prohibitions, which were enacted to offer an [*sic*] mechanism to allow individuals who are at least age 50 with 20 years of service to purchase service time and thus retire with a higher benefit at an earlier age. ERI was created as a financial incentive to employers (they could either not replace the retiree or hire younger [*sic*] employees at a lower salary). Allowing an employee to retire with a higher benefit and yet return to work under a contract was exactly what the General Assembly was trying to avoid when it enacted the ERI statute with the return to work prohibitions. Specifically, the Committee took the following into consideration when making this determination:

[(a)] The timing surrounding the creation and dissolution of EC[L].

[(b)] The timing surrounding the Agreement with the City as it relates to [plaintiff's] retirement.

[(c)] The *de minimus* nature of EC[L]'s employment outside of the Agreement with the City.

[(d)] The letter from the City attorney dated November 19, 2002[,] advising that he was told by IMRF that the corporation could not be a guise and further advising that [plaintiff] take other actions such as hiring more employees and run some small ads so that EC[L] could potentially take on some small engagements outside the Agreement with the City.

[(e)] The fact that [plaintiff], his wife, and his daughter were the only employees of EC[L].

[(f)] The fact that [plaintiff], at the time of the original execution of the Agreement, was both the Secretary and President of EC[L].

[(g)] The nature of the duties required under the Agreement and the fact that [plaintiff] alone fulfilled its requirement for a full-time staff person.

[(6) Plaintiff] must forfeit his early retirement and repay IMRF the portion of his annuity attributable to his early retirement incentive."

¶ 19 On July 22, 2011, the IMRF Board voted to uphold the administrative staff determination, adopting the findings and conclusions set forth in the Board's benefit review committee report. Prazen appealed the IMRF Board's decision to the circuit court of Sangamon County. On December 21, 2011, the circuit court affirmed the IMRF Board's decision.

¶ 20 This appeal followed.

¶ 21                                   II. ANALYSIS

¶ 22 On appeal, Prazen argues (1) the clear and unambiguous language of article 7 of the Pension Code requires a finding of "employment" or a "personal services contract" in order

to violate the ERI return-to-work restrictions, a finding not made by the IMRF Board; (2) the IMRF Board acted outside of its jurisdiction when it deemed itself to possess equitable powers, typically reserved for the courts, without explicit statutory authority to do so, and exercised those powers to forfeit Prazen's pension by finding his corporation was a guise to circumvent the ERI return-to-work restrictions; (3) Illinois law prohibits the IMRF Board from making the determination of whether there is "employment" or a "personal services contract"; and (4) even if the IMRF Board possesses equitable powers, its decision was against the manifest weight of the evidence because the overwhelming majority of the facts make it clear ECL was not a guise to avoid the ERI restrictions.

¶ 23                                                    A. Standard of Review

¶ 24        We review the agency's final determination, not the decision of the circuit court. *Sartwell v. Board of Trustees of the Teachers' Retirement System*, 403 Ill. App. 3d 719, 724, 936 N.E.2d 610, 616 (2010). Questions which involve an agency's interpretation of a statute or an administrative rule are questions of law and are reviewed *de novo*. *Id.* Factual determinations are reviewed under the manifest weight of the evidence standard. *Id.* Only where the opposite conclusion is clearly apparent will a finding be against the manifest weight of the evidence. *Id.* at 724-25, 936 N.E.2d at 616. Mixed questions of law and fact are reviewed under the clearly erroneous standard. *Id.* at 725, 936 N.E.2d at 616. An agency's decision is clearly erroneous where "the reviewing court comes to the definite and firm conclusion that the agency has committed an error." *Id.*

¶ 25                        B. To Be Subject To Forfeiture of ERI Benefits, an ERI Annuitant
                              Must Have Accepted "Employment With" or Entered Into a
                              "Personal Services Contract With" an IMRF Employer

¶ 26        Prazen asserts pursuant to the statute, the language of which is clear and unambiguous, the only two circumstances which will result in an ERI annuitant forfeiting his age enhancement and creditable service are as follows: the annuitant must either have (1) accepted employment with an IMRF employer, or (2) entered into a personal services contract with an IMRF employer. Defendants respond section 7-141.1(g) of the Pension Code is ambiguous because the terms "employment with" and "personal services contract with" are capable of more than one interpretation.

¶ 27        The cardinal rule of statutory construction is to ascertain and give effect to the legislature's intent. *People ex rel. Birkett v. City of Chicago*, 202 Ill. 2d 36, 45, 779 N.E.2d 875, 881 (2002). When construing a statute, a court considers the statute in its entirety. *Jones v. Board of Trustees of the Police Pension Fund*, 384 Ill. App. 3d 1064, 1068, 894 N.E.2d 962, 966 (2008). " 'The most reliable indicator of legislative intent is the language of the statute, which, if plain and unambiguous, must be read without exception, limitation, or other condition.' " *Id.* (quoting *People v. Davis*, 199 Ill. 2d 130, 135, 766 N.E.2d 641, 644 (2002)). Generally, "[a] court will give substantial weight and deference to an interpretation of an ambiguous statute by the agency charged with administering and enforcing that statute." *Birkett*, 202 Ill. 2d at 46, 779 N.E.2d at 881. However, statutes concerning pensions are

-6-

liberally construed in favor of the pensioner. *Jones*, 384 Ill. App. 3d at 1068, 894 N.E.2d at 967.

¶ 28    Section 7-141.1(g) of the Pension Code provides, in part:

"An annuitant who has received any age enhancement or creditable service under this Section and thereafter *accepts employment with* or *enters into a personal services contract with* an employer under this Article thereby forfeits that age enhancement and creditable service; except that this restriction does not apply to (1) service in an elective office, so long as the annuitant does not participate in this Fund with respect to that office, (2) a person appointed as an officer under subsection (f) of Section 3-109 of this Code, and (3) a person appointed as an auxiliary police officer pursuant to Section 3.1-30-5 of the Illinois Municipal Code." (Emphases added.) 40 ILCS 5/7-141.1(g) (West Supp. 2011).

¶ 29    Section 7-141.1(g) of the Pension Code is specific and makes clear the only two circumstances in which an annuitant must forfeit his age-enhancement or creditable-service benefits. See 40 ILCS 5/7-141.1(g) (West 2010). While not specifically defined by statute, neither the phrase "employment with" nor "personal services contract with" is ambiguous and we will not read ambiguity into a statute where none exists. The term "employee" is defined in article 7 of the Pension Code and includes a person who (1) is paid "for the performance of personal services or official duties out of the general fund of a municipality" or a fund controlled by the municipality, or (2) "[u]nder the usual common[-]law rules applicable in determining the employer-employee relationship, has the status of an employee with a municipality." 40 ILCS 5/7-109 (West 2010). To be "employed with" an IMRF employer, a person must first fit the definition of "employee." Further, a personal services contract is generally known as one which is not delegable because the services provided are specific to the person's unique skills. See *Sanfillippo v. Oehler*, 869 S.W.2d 159, 161-62 (Mo. Ct. App. 1993) (defining a personal service contract as one which " 'rest[s] on the skills, tastes, or science of a party, that is, those contracts wherein personal performance by the promisor is the essence and the duty imposed cannot be done as well by others as by the promisor himself' " (quoting 17A C.J.S. *Contracts* § 465, at 624-25 (1963))). See also Ballentine's Law Dictionary 942 (3d ed. 1969) (A "personal services contract" is "[a] contract for the furnishing of services by the promisor only, that is, services to be performed by no person other than the promisor.").

¶ 30    Prazen contacted the IMRF through his attorney two months before he incorporated ECL, which had been an unincorporated business for over three years, to ensure he would not be violating the return-to-work provisions of the ERI by working for a non-IMRF employer who contracts with an IMRF employer. Prazen again, through his attorney, contacted the IMRF on two occasions in 2002 to verify no changes had been made which would affect his ERI benefits by ECL's continued Agreement with the City. As defendants acknowledge in their brief, "IMRF has the obligation to advise individuals who inquire about returning to work after retiring under an ERI as to whether or not the retiree can go to work for a corporation, or other business, that may contract with an IMRF employer and not lose their ERI benefits. This obviously requires IMRF to interpret [s]ection 7-141.1(g) as it applies to that particular retiree's prospective employment." Thus, the IMRF representative had to consider the

-7-

meaning of "employment with" and "personal services contract with" to confirm Prazen, based on his factual situation, would not be violating this provision of the Pension Code.

¶ 31 We find section 7-141.1(g) of the Pension Code is not ambiguous. Even if we found ambiguity, this statute concerning a pension would be construed in favor of plaintiff. See *Jones*, 384 Ill. App. 3d at 1068, 894 N.E.2d at 967. Unless the legislature has granted IMRF the power to create new conditions which would subject an ERI annuitant to forfeiture of his ERI benefits, an annuitant must have accepted "employment with" or entered into a "personal services contract with" an IMRF employer.

¶ 32 C. The IMRF Board Does Not Have the Power To Determine a Corporation Is a
Guise Formed Solely To Circumvent the Return-To-Work Restrictions

¶ 33 Prazen asserts the IMRF Board does not possess the equitable power to disregard a legally distinct entity and, thus, acted beyond its authority in finding ECL was created as a guise by Prazen to circumvent the return-to-work restrictions expressed in section 7-141.1(g) of the Pension Code. Defendants, however, argue its authority to find forfeiture without a finding of "employment with" or "personal service contract with" is contained in section 7-200 of the Pension Code. We agree with Prazen.

¶ 34 Section 7-200 provides the IMRF Board shall have the power:

"To carry on generally any other reasonable activities, including, without limitation, the making of administrative decisions on participation and coverage, which are necessary for carrying out the intent of this fund in accordance with the provisions of this Article." 40 ILCS 5/7-200 (West 2010).

Defendants assert this general grant of authority under section 7-200 to "make administrative decisions on participation and coverage" to carry out the intent of the fund supersedes the two specific circumstances in which the General Assembly has determined are grounds for forfeiture of the ERI incentives. This authority would allow the IMRF Board to create new grounds for the forfeiture of ERI benefits based on its interpretation of section 7-141.1(g). We are not persuaded.

¶ 35 A court must construe a statute in such a way that no term or phrase is rendered superfluous. See, *e.g.*, *Innovative Modular Solutions v. Hazel Crest School District 152.5*, 2012 IL 112052, ¶ 22, 965 N.E.2d 414. If construed in the manner urged by defendants, section 7-141.1(g) of the Pension Code would be rendered superfluous because the IMRF Board would have discretion to find forfeiture of ERI incentives for any number of reasons it determines carries out the legislature's intent–rather than the two specific reasons expressed by the legislature.

¶ 36 Administrative agencies such as the IMRF possess no general or common-law powers. *JMH Properties, Inc. v. Industrial Comm'n*, 332 Ill. App. 3d 831, 832, 773 N.E.2d 736, 737 (2002). An administrative agency's powers consist only of those granted to it by the state legislature and "any action it takes must be specifically authorized by the legislature." *Id.* at 832-33, 773 N.E.2d at 737. Any action taken by an administrative agency not provided for by statute is an act outside the agency's jurisdiction. *Id.* at 833, 773 N.E.2d at 737.

¶ 37    Here, the legislature did not grant the IMRF Board power to find a corporation was created solely as a guise to circumvent the return-to-work provisions expressed in section 7-141.1(g) of the Pension Code. The legislature granted the IMRF Board the power "[t]o carry on generally *any other reasonable activities*" to carry out the intent of the IMRF. Creating new conditions–of which an annuitant has no notice, and in direct conflict with section 7-141.1(g) in order to find forfeiture– is not a reasonable activity. Had the legislature intended to give the IMRF Board discretion to invent new conditions to find forfeiture, surely it would have stated as much.

¶ 38    We hold in order for an ERI annuitant to be subject to forfeiture of the ERI incentives, the ERI annuitant must have accepted "employment with" or had a "personal services contract with" an IMRF employer. Here, the IMRF Board expressly stated, "The ability of the Board to determine whether or not [plaintiff] is an employee is irrelevant to this proceeding because no such determination is being made." Contrary to the IMRF Board's assertion, whether an annuitant is an employee of, or a party to a personal service contract with, an IMRF employer is vital to finding a violation of section 7-141.1(g) of the Pension Code. The Agreement at issue here was between the City and ECL–a distinct legal entity–not between the City and plaintiff. Determining a corporation is a "guise" is an equitable remedy similar to, if not the same as, a piercing the corporate veil action. While the legislature gave the IMRF Board the power to make administrative decisions on participation and coverage necessary for carrying out the intent of the Fund, this general power does not include equitable remedies generally reserved for the courts.

¶ 39                                    D. Remaining Issues

¶ 40    If this outcome is something the General Assembly wanted to avoid, then legislative action is required. We understand why the IMRF Board looked askance at the arrangement between ECL and the City, but under the present statutory scheme, the IMRF Board did not have the authority to remedy what it viewed as a guise for wrongdoing. If the General Assembly chooses to do so, it can provide the IMRF that authority. Because we find the IMRF Board lacks authority to determine whether ECL was created as a guise to circumvent the return-to-work provisions expressed in section 7-141.1(g) of the Pension Code, and because the Agreement was between ECL and the City, not Prazen and the City, we need not address whether the IMRF Board has the authority to determine who is and who is not employed with or has a personal services contract with, an IMRF participating employer. Further, we need not address whether the IMRF Board's decision was against the manifest weight of the evidence. The agency's order was beyond its authority, and we reverse the circuit court's judgment affirming it and vacate the agency's order.

¶ 41                                    III. CONCLUSION

¶ 42    We reverse the circuit court's judgment affirming the IMRF Board's order and vacate the IMRF Board's order.

¶ 43    Reversed; IMRF Board's decision vacated.